Rose Ann BOLAND, as Trustee for the
Heirs and Next of Kin of Francis D.
Boland, Deceased, Appellant,

v.

George L. GARBER and Winona
Clinic, Respondents.

No. 46914.

Supreme Court of Minnesota.

Aug. 19, 1977.

Simon, Schneider & Zimmerman, Ralph
S. Schneider and Ronald L. Simon, Minne-
apolis, for appellant.

Geraghty, O'Loughlin & Kenney and
David C. Hutchinson, James W. Kenney, St.
Paul, for respondents.

TODD, Justice.

An operation was performed on Francis D. Boland for the removal of his gall bladder. Shortly after the operation, Boland's physical condition deteriorated requiring the performance of several additional surgical procedures. Boland eventually died as a result of complications, and his wife, as trustee for his heirs and next of kin, brought a wrongful death action against the surgeon who performed the initial operation and Winona Clinic, a partnership of which the surgeon was a member.[1] Following a verdict for defendants, the trustee asserts as errors the failure to allow in evidence a hospital rule requiring an assistant to be present during the surgery, and the improper admission of defense medical testimony for lack of notice. We affirm.

Boland initially consulted Dr. George L. Garber because he was experiencing some problems with his gall bladder. Surgery was recommended for his condition, and on August 21, 1972, Boland's gall bladder was surgically removed by Dr. Garber at the Winona Community Memorial Hospital. A few days later, postoperative complications developed indicating the possibility of a common bile duct obstruction.

A second operation was deemed necessary in order to halt the deterioration of Boland's condition caused by the obstruction. The second operation was also performed by Dr. Garber, who was assisted in this procedure by Dr. Charles Schafer. Unfortunately, the operation had to be terminated before the common bile duct obstruction could be eliminated due to problems encountered by the clinic in securing an adequate amount of the proper blood type for transfusion purposes. Boland's condition continued to deteriorate, necessitating his transfer to the Mayo Clinic for more intensive treatment. Four additional operations were performed on Boland at the Mayo Clinic in an attempt to save his life. Despite the concentrated efforts on his behalf, Boland ultimately died on December 19, 1972, from a general physical deterioration caused primarily by various postoperative complications.

The gravamen of the plaintiff's complaint is that the obstruction of the bile duct occurred during the first operation because of trauma inflicted upon the duct by Dr. Garber. The record, while indicating that trauma can cause an obstruction, does not clearly show that such trauma occurred in the initial operation. After a 5-day trial, the case was submitted to the jury, which returned a verdict in favor of the defendants, Dr. Garber and Winona Clinic. The plaintiff brought this appeal after her motion for a new trial was denied by the trial court. The following issues are raised on appeal:

(1) Whether the trial court erred in excluding from evidence a written hospital regulation requiring the presence of an assistant physician during major surgery; and

(2) Whether the trial court erred in permitting an expert medical witness to testify for the defense.

1. During the trial, plaintiff's counsel attempted to introduce Rule VI of the Winona Hospital Surgery Department Rules into evidence. The rule reads as follows:

"All surgeons shall have an assistant for any major operation. No anesthesia will be started until the surgeon and his assistant are in the operating suite and have signified their intention to proceed with the operation."

The rule was offered as evidence that Dr. Garber departed from the acceptable standard of care in performing the gall bladder surgery on Boland in that he was not assisted in the procedure by another physician. It was conceded by both parties that the gall bladder surgery performed on Boland was a major operation within the meaning of the rule. Dr. Garber also admitted that there was not a physician-assistant present during the first operation on Boland.

1. The Winona General Hospital Association was originally named as a defendant in this case. However, on the first day of trial, the trustee's motion to dismiss with prejudice the claim against the hospital was granted by the trial court.

Defense counsel interposed an objection to the rule's admission on the grounds of relevancy and materiality. After initially reserving its ruling on the exhibit's admissibility, the trial court finally held that Rule VI was inadmissible and excluded it from evidence. In so ruling, the trial court analogized the proffered hospital rule to rules of a railroad company and relied upon several prior decisions of this court holding that railroad rules are not admissible into evidence to delineate the standard of care for employees of the company.[2] The trial court also stated that it was excluding the hospital rule from evidence on the further grounds of relevancy and materiality.

On appeal, plaintiff argues that the trial court committed reversible error by excluding the rule from evidence.[3] None of our prior cases deal precisely with the issues presented by this contention.

■ However, several decisions of other jurisdictions have considered the admissibility of similar standards or rules in a medical malpractice setting. After reviewing these cases, we believe the better reasoned approach is to allow the hospital rules into evidence when they are determined by the trial court to be sufficiently relevant. Representative of the decisions favoring the admissibility of hospital rules or regulations in a medical malpractice action is *Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965), certiorari denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966), in which the Illinois Supreme Court determined that hospital accreditation standards, state licensing regulations, and hospital bylaws all were relevant to a determination of the standard of care required of the defendant hospital:

"In the present case the regulations, standards, and bylaws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did."[4] 33 Ill.2d 332, 211 N.E.2d 257.

In adopting a rule favoring the admissibility of hospital rules as evidence of the standard of care in a community, we also adhere to the caveat included in the decisions of other state courts which states that the rules are not conclusive on the issue of negligence.

■ We hold that the trial court erred in refusing to admit Rule VI of the Winona Hospital Surgery Department Rules as evidence of the standard of care required of local surgeons performing a major operation. A rule requiring the presence of a physician-assistant at a major operation is evidence of accepted medical practice in the community in which it was adopted and therefore is relevant and material in a medical malpractice action, just as evidence of custom is relevant and material in other situations involving an allegation of negligence. See, e.g., *Schmidt v. Beninga,* 285 Minn. 477, 173 N.W.2d 401 (1970); *Segal v. Bloom Brothers Co.,* 249 Minn. 367, 82 N.W.2d 359 (1957); *Hartmon v. National Heater Co.,* 240 Minn. 264, 60 N.W.2d 804 (1953). Since the customary practice of physicians in a community is the determinative standard in medical malpractice cases, a rule adopted by the physicians working at the Winona Hospital is certainly both relevant and material in the present case.

**2.** See, e.g., *Gillespie v. Great Northern Railway Co.,* 127 Minn. 234, 149 N.W. 302 (1914); *Fonda v. St. Paul City Railway Co.,* 71 Minn. 438, 74 N.W. 166 (1898).

**3.** Defendants refer the court to Minn. St. 145.-65, which reads: "No guideline established by a review organization shall be admissible in evidence in any proceeding brought by or against a professional by a person to whom such professional has rendered professional services."

Defendants argue that this statute is applicable in the present case and precludes the introduction of Rule VI into evidence. We do not consider the applicability or merit of this contention since the argument was not presented to the court in a timely or appropriate manner.

**4.** See, also, *Foley v. Bishop Clarkson Memorial Hospital,* 185 Neb. 89, 173 N.W.2d 881 (1970); *Stone v. Proctor,* 259 N.C. 633, 131 S.E.2d 297 (1963).

■ Although we disagree with the trial court's exclusion of the rule from evidence, we do not believe that its decision on the issue amounted to reversible error. A careful review of the entire record, in particular the testimony of the expert medical witnesses, reveals that the medical experts never testified, even by implication, that the absence of a physician-assistant during the initial surgical procedure for removal of the gall bladder was causally related to Boland's ultimate demise. The failure of the plaintiff to establish a causal relationship between the violation of the hospital rule and the injury which led to Boland's death is fatal to her claim that the trial court committed reversible error by excluding the rule from evidence. Furthermore, assuming arguendo that the rule had been originally received in evidence by the trial court, the failure to prove that Dr. Garber's violation of the rule was causally connected to Boland's injury would require the suppression of such evidence upon proper motion by defense counsel.

2. After the jury had been impaneled and plaintiff's counsel had completed his opening statement, a discussion was held in chambers wherein defense counsel disclosed for the first time the name of an expert witness he intended to call. Approximately one week before trial defense counsel, prompted by a conflict in trial scheduling, had assumed control of the case from another member in his law firm. At approximately 5:30 p.m. of the Friday afternoon immediately preceding the commencement of the trial, he obtained an agreement from Dr. Joseph B. Sprafka to testify as a defense witness in the trial.

When defense counsel revealed his intention to call Dr. Sprafka as an expert witness, plaintiff's counsel moved that his testimony be suppressed, or in the alternative, that plaintiff be afforded an opportunity to take the expert's deposition and be provided with a copy of the medical report upon which the doctor would base his opinion. Defense counsel provided the plaintiff with a copy of the medical report. Dr. Sprafka's deposition was taken prior to the date on which he appeared to testify for the defense.

■ Despite being afforded a copy of the medical report and an opportunity to depose Dr. Sprafka prior to his appearance in the trial, plaintiff renewed her motion to suppress his testimony. Although the trial court disapproved disclosing the identity of an expert witness at such a late stage in the trial proceedings, it denied plaintiff's motion to suppress Dr. Sprafka's testimony. The court premised its decision upon the unusual circumstances present in this case and upon the fact that defense counsel had complied with plaintiff's alternative requests. We believe this ruling was a proper exercise of discretion which did not unduly prejudice the plaintiff, and therefore did not constitute reversible error. *Shymanski v. Nash,* Minn., 251 N.W.2d 854 (1977); *Dorn v. Home Farmers Mutual Ins. Assn.,* 300 Minn. 414, 220 N.W.2d 503 (1974). However, we do observe that the peculiar facts present in this case permitted the use of such evidence. Counsel should be diligent in preparing their cases for trial so as to prevent the occurrence of similar exigent situations.[5]

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

5. Defendants filed a notice of review requesting the court to determine the propriety of cross-examining an expert witness in economics concerning the impact of income taxes upon his calculation of pecuniary loss in a wrongful death action. Our decision to affirm the trial court's denial of the plaintiff's motion for a new trial is dispositive of this appeal. We therefore decline to address this issue.