Francis L. DENNIE, Appellant,

v.

METROPOLITAN MEDICAL CENTER, Respondent.

Nos. CO-84-2016, C4-85-117.

Court of Appeals of Minnesota.

June 18, 1985.

Barbara J. Rudquist, DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for appellant.

James F. Roegge, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Francis L. Dennie appeals from judgment entered for respondent Metropolitan Medical Center (Metropolitan) and denial of Dennie's motion for a new trial,

both of which resulted from the trial court's suppression of Dennie's expert witness testimony and its subsequent dismissal with prejudice of Dennie's cause of action for failure to present a prima facie case. We reverse and remand for trial.

## FACTS

This is a medical malpractice action. Dennie alleges that, while hospitalized at Metropolitan for surgery, a nurse employed by Metropolitan negligently administered an intramuscular injection into Dennie's left buttock, causing permanent injury to his sciatic nerve.

Dennie commenced this action on November 24, 1980. His counsel failed to respond to interrogatories served by Metropolitan on January 9, 1981. Dennie's counsel also failed to appear at a hearing on October 19, 1981 brought by Metropolitan to compel discovery.

The trial court issued the following order on October 19, 1981:

> That Plaintiff shall serve executed answers to Defendant's Interrogatories and otherwise respond to Defendant's Request for Production of Medical Reports, Medical Authorizations and Statements within 15 days of this Order; that in the event Plaintiff fails to comply with the provisions of this Order, Defendant may, without further notice, have entry of judgment of dismissal with prejudice of Plaintiff's Complaint herein upon notification to the Court of Plaintiff's failure to comply with this Order.

Dennie executed answers to the interrogatories as ordered. In those answers, he stated that Dr. Harold Noran, one of Dennie's treating physicians during his hospitalization, would testify that the injection was carelessly given and precipitated Dennie's sciatic condition. This answer was given in reliance on prior statements allegedly made by Dr. Noran.

In a deposition in April 1982, Dr. Noran denied that the injection had been negligently given. Dennie asserts the change in Dr. Noran's medical opinion was in part motivated by his apprehension that to testify against Metropolitan would jeopardize his staff privileges at the hospital. He also maintains that subsequently a number of prominent neurologists in the Metropolitan area refused to testify as an expert witness for him, citing a reluctance to testify against Metropolitan.

On August 6, 1982, the case was certified as ready for trial pursuant to Special Rule 4.01 of the Fourth Judicial District. Dennie's counsel did not file a certificate of nonreadiness for trial.

The counsel responsible for Dennie's case left the firm, and new counsel was assigned. The new counsel contacted Metropolitan's counsel on June 16, 1983 by phone, informed him that she was the new counsel, and requested a stipulation that discovery be reopened. This request was refused. A subsequent request made in December 1983 was also refused. At that time Dennie's counsel indicated to Metropolitan's counsel her continuing difficulty in obtaining an expert willing to testify against the hospital, but indicated an intention to inform Metropolitan as soon as an expert was retained. On February 8, 1984, Metropolitan's counsel was served Dennie's statement of the case which listed Steven Laven, R.N. and a "neurologist yet to be named" as expert witnesses for Dennie.

Dennie's counsel made an oral motion to reopen discovery at the pretrial settlement conference on February 14, 1984. This motion was denied for lack of notice. Ultimately, the case was set for trial the week of June 18, 1984. On June 11, 1984, Dennie served upon Metropolitan supplemental answers to interrogatories which listed John Tulloch, M.D. as an expert witness. Dr. Tulloch had agreed to review Dennie's medical records in late May 1984. Dennie's counsel states she received a preliminary report regarding the records on June 1, and a subsequent report on June 5. Dennie's counsel was unable to meet with Dr. Tulloch until several days later. Apparently, no contact was made with Metropolitan's counsel until after that meeting.

The case was called out for trial on June 19, 1984. Metropolitan moved to suppress the testimony of Dr. Tulloch and Nurse Laven on the grounds that Dennie's answers were untimely and inadequate. Prior to this time, Metropolitan had never requested leave to depose either Laven or Tulloch. The trial court denied the motion and ordered Dennie to produce Laven and Tulloch that day for depositions. Dennie was also ordered to pay the full cost of the depositions, including Metropolitan's attorney's fees.

Laven was deposed the afternoon of June 19. He testified that he was employed as a full-time legal assistant by the law firm representing Dennie. (Laven began working on Dennie's case in late 1983. Sometime after that, he was hired as a paralegal for the law firm representing Dennie. Dennie was unable to find another nurse to testify for him.) When Laven was asked to list the materials he had reviewed in formulating his opinions, he was instructed not to answer because such would involve work product. Requests by Metropolitan to produce the medical records Laven had reviewed were refused on the grounds that notations had been made on the records by Dennie's counsel.[1] Disclosure of a letter-report Laven wrote for Dennie's counsel in November or December of 1983 was also refused on the grounds that the letter-report was prepared in anticipation of litigation and, therefore, was outside the scope of discovery.

Tulloch was deposed the evening of June 19. During the deposition, Metropolitan's request to produce a May 28 letter of Dr. Tulloch was refused. Dr. Tulloch was also instructed not to answer questions regarding that letter. Dennie's counsel claimed the letter was work product. Dr. Tulloch did testify that the opinions he had previously reported in that letter were identical to those given at the deposition, i.e., that Dennie's symptoms were caused by the allegedly negligently-administered injection.

On June 20, 1984, Metropolitan renewed its motion to suppress the experts' testimony on the grounds previously stated. Additionally, Metropolitan sought dismissal due to Dennie's alleged deliberate and tactical obstruction of the depositions and discovery of the previous day. Dennie offered the documents at issue to the trial court, asking for an in camera inspection. The trial court originally refused, then reviewed the letter from Dr. Tulloch. The trial court found the opinions contained within the letter to be inconsistent with those expressed at Tulloch's deposition. The court then ruled that all the documents should have been disclosed to Metropolitan's counsel and ordered the expert testimony suppressed.

Metropolitan then moved to dismiss the complaint. Dennie made an offer of proof, arguing that the case could still go forward by an application of the doctrine of res ipsa loquitur. The trial court ruled that, without the testimony of Laven and Tulloch, Dennie could not present a prima facie case and dismissed the complaint.

In its memorandum accompanying the order denying Dennie's motion for a new trial, the trial court acknowledged that this was a severe sanction. The trial court in supporting its decision stated:

> In the peculiar circumstances of the case, the very nature and objectives of discovery were circumvented. Regardless of the reasons, the result was that the Defendant was unable to determine what the substance of the testimony was to be and was precluded from preparing an adequate defense. For this reason, the Court excluded the Plaintiff's experts. Without the expert testimony, the Plaintiff was unable to present a prima facie case. * * * This Court prefers to decide cases on their merits rather than by summary disposition. It was clear that because of the peculiar facts of this case, including the way discovery was handled, and the manner in which the Defendant was precluded from obtaining sufficient

1. There appears to be no controversy between the parties in regard to Dennie's medical records themselves. The controversy centers around those copies utilized by Laven.

information about the expert testimony, this was one of those rare cases in which the interests of justice were best served by summary disposition.

## ISSUES

Did the trial court err when it suppressed the testimony of appellant's expert witnesses and subsequently dismissed appellant's cause of action with prejudice?

## ANALYSIS

In *Firoved v. General Motors Corporation*, 277 Minn. 278, 152 N.W.2d 364 (1967), the Minnesota Supreme Court reversed a trial court's pretrial dismissal of plaintiff's action on the merits, noting:

Since a dismissal with prejudice operates as an adjudication on the merits, it is the most punitive sanction which can be imposed for noncompliance with the rules * * *. The primary factor to be considered in determining whether to grant a dismissal with or without prejudice is the prejudicial effect of the order upon the parties to the action * * *. Obviously, the prejudice to plaintiff of such a dismissal is certain and usually permanent. As to defendant, the ordinary expense and inconvenience of preparation and readiness for trial, which can be adequately compensated by the allowance of costs, attorney's fees, or the imposition of other reasonable conditions, are not prejudice of the character which would justify either a refusal to permit plaintiff to dismiss without prejudice or a dismissal with prejudice. The defense has the burden of showing particular prejudice of such a character that some substantial right or advantage will be lost or endangered * * *.

*Id.* at 283, 152 N.W.2d at 368.

Under the *Firoved* test, the burden upon Metropolitan is a substantial one. This court must determine if that burden was met, and if the trial court in excluding the testimony of Laven and Tulloch abused its discretion.

We note first that the October 19, 1981 order, upon which the trial court implicitly

relied, was issued prior to Dennie's present counsel's involvement in the case. Upon her entry, she sought and was refused reopening of discovery.

Dennie's difficulty in obtaining expert witnesses appears to have been genuine. In the early months of the litigation, it appeared that Dr. Noran would be Dennie's expert witness. However, his apparent change in testimony precluded his continuing availability as Dennie's expert witness. In December 1983, after the parties' failure to agree to continuing discovery, Dennie informed Metropolitan of the persisting difficulties in securing an expert witness, but gave assurance that Metropolitan would be informed as soon as an expert was obtained. The delay of less than two weeks between Dr. Tulloch's agreement to appear as an expert witness and Metropolitan's receipt of that information should not be deemed fatal to admission of Dr. Tulloch's testimony, nor did the trial court appear to consider it so. On June 19, the trial court ordered that both Laven and Dr. Tulloch be deposed and that Dennie assume all costs connected with those depositions. (Although Metropolitan had known since February 28, 1984 that Laven would testify and since June 11 that Dr. Tulloch would, no request was made by Metropolitan to depose either witness prior to trial.)

The trial court's actions on June 19 were fully consistent with recent rulings of both the Minnesota Supreme Court and this court.

[W]here the testimony of an expert is necessary to establish the proponent's cause, as in a malpractice case, and where the failure to disclose was inadvertent, * * * the exercise of * * * [the trial court's] discretion should be tempered by an effort to seek a solution short of exclusion that will accommodate the competing interests inherent in the discovery rules and the adjudicative process itself.

*Cornfeldt v. Tongen*, 262 N.W.2d 684, 697–698 (Minn.1977). Because an exclusion of expert testimony is a harsh sanction which trial courts should use with restraint, al-

lowing a continuance is the preferred solution. *Quill v. Trans World Airlines,* 361 N.W.2d 438 (Minn.Ct.App.1985).

The disagreements which arose at the June 19 depositions appear to have arisen as a result of Dennie's good faith interpretations of Minnesota Rules of Civil Procedure 26.02(3) and 35.04, and Minnesota Rule of Evidence 705.

Rule 26.02(3) reads in pertinent part as follows:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision 26.02(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Rule 35.04 reads in pertinent part:

When medical privilege has been waived by a party * * *, such party within ten days of a written request by any other party,

a) shall furnish to the requesting party copies of all medical reports previously or thereafter made by any treating or examining medical expert, and

b) shall provide written authority signed by the party of whom request is made to permit the inspection of all hospital and other medical records, concerning the physical, mental or blood condition of such party as to which privilege has been waived.

Depositions of treating or examining medical experts shall not be taken except upon order of the court for good cause shown upon motion and notice to the parties and upon such terms as the court may provide.

Disclosures under this rule shall include the conclusions of such treating or examining medical expert.

Rule 705 reads as follows:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

A fair reading of these rules indicates that Dennie's position at the June 19 depositions that work product was involved was at least a defensible one. Neither Laven nor Dr. Tulloch seem to fit the descriptions of treating or examining physicians set forth in Rule 35.04. Arguably, the materials requested by Metropolitan at the June 19 depositions could fall within the scope of Rule 26.02(3). Understandably, Dennie might deem it inappropriate under Rule 705 that Laven and Tulloch be required to disclose the facts or data underlying their opinions "unless the court requires otherwise." Minn.R.Evid. 705. Unfortunately, neither party attempted to contact the court to seek a ruling on the afternoon or evening of June 19.

On June 20, the trial court was forced to again address the thorny issues which had confronted it on several prior occasions. We are not insensitive to the trying circumstances under which the court had to make its decisions. However, we must also recognize the comments of the Minnesota Supreme Court in *Firoved* and *Cornfeldt:*

Although we readily acknowledge that the trial court under the exigencies prevailing at the time was confronted with an extremely close and difficult decision, we are persuaded that under the particular circumstances shown the action taken was too drastic.

*Firoved,* 277 Minn. at 282, 152 N.W.2d at 368.

(3) Plaintiff also contends that the trial court abused its discretion in restricting the testimony of two expert medical witnesses, * * *, because their identities as expert witnesses had not been revealed during the discovery process. Although we find that neither ruling, if erroneous, was prejudicial, we caution trial courts from readily excluding expert testimony in malpractice cases for inadvertent failure to disclose that testimony during discovery. Exclusion is justified only when prejudice would result. (Cites omitted.) When the failure to disclose was not willful, courts should consider alternative methods short of exclusion for preventing prejudice, e.g., granting a continuance and assessing costs against the offending party, (cites omitted); or limiting the subject matter of the testimony to matters already disclosed. (Cites omitted.)

*Cornfeldt* at 697.

On June 19, the trial court had, in effect, elected one of the less harsh alternatives to dismissal suggested by the *Cornfeldt* court. It had ordered depositions at the expense of Dennie. It was unfortunate that problems arose during those depositions. The reaction of the trial judge on June 20 is understandable in human terms. However, the trial court would have served Dennie's interests in seeing his cause of action concluded by trial on the merits, and Metropolitan's interest in remaining free from prejudice, by an in camera inspection of all disputed documents, a ruling on all disputed questions, and a continuance, if necessary, to allow Metropolitan to prepare to fully meet Laven's and Tulloch's testimony.

We must conclude that the penalties ultimately borne by Dennie—the cost of depositions, the exclusion of expert testimony, and the dismissal of his case with prejudice—evidence an abuse of the trial court's discretion.

In view of our decision regarding the trial court's exclusion of expert testimony and dismissal with prejudice of Dennie's action, we do not address Dennie's argument regarding the applicability of the doctrine of res ipsa loquitur to the facts of this case.

### DECISION

The trial court erred when it suppressed the testimony of appellant's expert witnesses and dismissed appellant's cause of action with prejudice for failure to state a prima facie case.

Reversed and remanded for trial.