Francis L. DENNIE, Appellant,

v.

METROPOLITAN MEDICAL CENTER,
Petitioner, Respondent.

Nos. C0–84–2016, C4–85–117.

Supreme Court of Minnesota.

May 16, 1986.

Barbara Rudquist, Minneapolis, for appellant.

James F. Roegge, Robert E. Salmon, Minneapolis, for respondent.

AMDAHL, Chief Justice.

The issue in this case is whether the trial court abused its discretion in suppressing the testimony of plaintiff's experts in this medical malpractice action. The trial court's action eliminated all of plaintiff's expert testimony necessitating a judgment of dismissal against plaintiff. The Court of Appeals reversed, holding that given the facts of this case, the penalties borne by plaintiff evidenced an abuse of the trial court's discretion. We granted defendant's petition for further review and affirm the Court of Appeals decision.

The material facts are not in dispute. On December 4, 1978, plaintiff Francis Dennie was admitted to Metropolitan Medical Center for numbness in his right hand. Dr. Harold Noran performed an electromyogram on plaintiff and diagnosed carpal tunnel syndrome. Dr. Noran also diagnosed chronic ideopathic polyneuritis in plaintiff's right arm and both of his legs. This means that he had inflammation of certain peripheral nerves, the cause of which was unknown. Dr. Noran also found the condition to be worse in plaintiff's left leg than in his right. No treatment was prescribed for this condition.

Surgery was performed on the morning of December 7 to correct the carpal tunnel syndrome. At 1 p.m. that afternoon, plaintiff summoned a nurse to give him something for his pain. A registered nurse gave him a shot of Demerol in the left buttock. Approximately 3½ hours later, plaintiff began experiencing extreme pain in his entire leg. Although he was to have been released the following day, plaintiff remained hospitalized for 14 days for treatment of his left leg. Plaintiff was bedridden for 3 months following his release from the hospital and experienced pain in his left leg up to the date of trial.

On November 24, 1980, plaintiff commenced this malpractice action against Metropolitan Medical Center, alleging that the nurse who administered the Demerol hypo did so negligently, causing permanent damage to the sciatic nerve in plaintiff's left leg. Defendant denied liability and presumably would argue at trial that plaintiff's condition was caused by either unavoidable accident or his preexisting polyneuritis. The issue before this court, however, arises from the manner in which plaintiff's pretrial discovery was conducted.

On January 9, 1981, shortly after plaintiff commenced this suit, defendant served on plaintiff interrogatories and requests for production of documents. Receiving no reply, defendant moved a Hennepin County District Court judge on October 19, 1981, to compel discovery. Plaintiff made no appearance at the hearing and the court ordered that answers be made within 15 days. Plaintiff responded that Dr. Noran would appear as his expert and would testi-

fy that the Demerol injection was given negligently, the injection caused plaintiff's sciatic aggravation, and the injury was avoidable. On April 20, 1982, however, defendant deposed Dr. Noran who testified that he did not believe the injection was given negligently. Defendant then filed a certificate of readiness on August 6, 1982, pursuant to Special Rule 4.01 of the Fourth Judicial District. Plaintiff did not file a certificate of nonreadiness, thus permitting further discovery only upon order of the court under Fourth Judicial District Special Rule 2.01.

In early 1983, plaintiff's attorney left the firm representing plaintiff and his present lawyer took over the file. She twice contacted defense counsel requesting a stipulation to reopen discovery because of difficulty locating an expert witness, but her requests were refused. Her motion for an order reopening discovery at a February 14, 1984, pretrial settlement conference before a district court referee was denied for lack of proper written notice. As witnesses on her statement of the case, filed February 8, 1984, she listed Dr. Noran, Steven Laven, R.N., and a "neurologist yet to be named."

On May 3, 1984, the Clerk of Court for Hennepin County noticed the trial for the week of June 18, 1984. Shortly thereafter, plaintiff's counsel contacted Dr. John Tulloch, a neurologist, who eventually agreed to testify as plaintiff's expert some time at the beginning of June. On June 11, she submitted supplemental answers to defendant's expert interrogatories and named Dr. Tulloch and Laven as her expert witnesses. Her answer to Interrogatory Number 2 reads:

2. As to each such witness, state the following in complete detail:

a. Any specific acts or omissions by the defendant that are claimed to have been a departure from the applicable standard.

b. What the defendant either should or should not have done under the circumstances.

c. Specifically how such act or omission caused or contributed to plaintiff's damage.

d. What specifically would have been the alternative treatment, if any.

e. How such alternative treatment would have affected the outcome.

ANSWER

a. The injection was given negligently by one of the agents or employees of defendant.

b. The defendant should have given the injection in the proper manner.

The case was called for trial on June 19, 1984, at which time defense counsel moved to suppress the testimony of both Dr. Tulloch and Laven. The grounds for the motion were that the disclosure of the experts' identity was untimely and the substance of their opinions inadequate to allow proper cross-examination, thereby prejudicing defendant. Plaintiff's counsel contested the motion, citing her hardship in locating a neurologist willing to testify and the fact that she simply was unsure of the substance of Dr. Tulloch's testimony. The trial judge denied defendant's motion, continued the trial until the following morning, and ordered that the depositions of Dr. Tulloch and Laven be taken that afternoon.

Disputes arose between counsel over work product at both depositions. At the Laven deposition, it was revealed that the witness had become employed by plaintiff's law firm 3 weeks earlier. When defense counsel asked Laven what documents he had reviewed in connection with the case, plaintiff's counsel objected to the questioning as calling for work product. She specified, however, that she did not object to the question as it related to medical records, rather to any written communication between them either as paralegal-attorney or as expert-attorney. When defense counsel asked to see the medical records that Laven reviewed, plaintiff's counsel again interposed a work product objection. She explained that she had markings on the records constituting work product and she had previously produced the entire record for defendant. She also refused to produce

a report of Laven's findings submitted to her, again raising a work product objection.

A similar encounter occurred at Dr. Tulloch's deposition. When asked to produce an opinion letter prepared by Dr. Tulloch for plaintiff's counsel, she refused on the basis of work product. She explained at the deposition that "it's my position that this is not an expert witness report but this is work product from the communication between an expert and an attorney in preparation for trial."

The following morning, defense counsel renewed his motion to suppress the testimony of plaintiff's experts. The court granted the motion. With respect to Laven, the court ruled that plaintiff's counsel had the obligation to insulate him from any work product and once he was exposed to it, she had the obligation to turn it over to opposing counsel. Plaintiff's counsel then offered to have the court conduct an in camera review of the materials, but the court refused her request. Regarding Dr. Tulloch's report, the court ruled that she had the obligation to turn over the report under Minn.R.Civ.P. 35. It found further support for suppression in that Dr. Tulloch's letter differed from the opinion he was prepared to give at trial. Plaintiff's counsel then made an offer of proof requesting that she be allowed to present her case on a res ipsa loquitur theory which the trial court rejected as inadequate. Accordingly, since plaintiff had no expert testimony to present on the issue of negligence, the court dismissed his cause of action with prejudice for failure to present a prima facie case.

The Court of Appeals reversed the trial court, holding that "the penalties ultimately borne by Dennie—the cost of depositions, the exclusion of expert testimony, and the dismissal of his case with prejudice—evidence an abuse of the trial court's discretion." *Dennie v. Metropolitan Medical Center*, 369 N.W.2d 552, 557 (Minn.App.1985). The appeals panel reasoned:

> [T]he trial court would have served Dennie's interest in seeing his cause of action

concluded by [a] trial on the merits, and Metropolitan's interest in remaining free from prejudice, by an in camera inspection of all disputed documents, a ruling on all disputed questions, and a continuance, if necessary, to allow Metropolitan to prepare to fully meet Laven's and Tulloch's testimony.

*Id.* We agree with the Court of Appeals analysis.

The general rule in Minnesota is that a trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion. *See Boland v. Garber*, 257 N.W.2d 384, 387 (Minn. 1977). Specifically, this is the standard applied to sanctions for a party's failure to disclose information regarding expert witnesses. *See Ford v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 294 N.W.2d 844, 847 (Minn.1980); *Phelps v. Blomberg Roseville Clinic*, 253 N.W.2d 390, 394 (Minn.1977). This court's position on the issue was best expressed in *Firoved v. General Motors Corp.*, 277 Minn. 278, 283–84, 152 N.W.2d 364, 368 (1967):

> An order of dismissal on procedural grounds runs counter to the primary objective of the law to dispose of cases on the merits. Since a dismissal with prejudice operates as an adjudication on the merits, it is the most punitive sanction which can be imposed for noncompliance with the rules or order of the court or for failure to prosecute. It should therefore be granted only under exceptional circumstances. The primary factor to be considered in determining whether to grant a dismissal with or without prejudice is the prejudicial effect of the order upon the parties to the action, although under extraordinary circumstances a dismissal with prejudice might be justified even though no prejudice to defendant is shown. Obviously, the prejudice to plaintiff of such a dismissal is certain and usually permanent. As to defendant, the ordinary expense and inconvenience of preparation and readiness for trial, which can be adequately compensated by the

allowance of costs, attorney's fees, or the imposition of other reasonable conditions, are not prejudice of the character which would justify either a refusal to permit plaintiff to dismiss without prejudice or a dismissal with prejudice. The defense has the burden of showing particular prejudice of such a character that some substantial right or advantage will be lost or endangered if plaintiff is permitted to dismiss and reinstitute the action.

In coming to a decision on this matter, the trial court had the difficult task of considering several problems which arose in the course of discovery for this trial. The first was the untimely disclosures of Nurse Laven and Dr. Tulloch as expert trial witnesses. Laven's identity was revealed on February 8, 1984, in plaintiff's statement of the case, and Dr. Tulloch was revealed on June 11, 1984, only 8 days before the case was called for trial.

■ The general rule in Minnesota is expert testimony should be suppressed for failure to make a timely disclosure of the expert's identity only where "counsel's dereliction [in failing to make the disclosure] is inexcusable and results in disadvantage to his opponent." *Krech v. Erdman*, 305 Minn. 215, 218, 233 N.W.2d 555, 557 (1975). "In situations where the failure to disclose is inadvertent but harmful, the court should be quick to grant a continuance and assess costs against the party who has been at fault." *Id.* The crucial question is whether defendant has been prejudiced to any appreciable degree by the late disclosure. *See Phelps*, 253 N.W.2d at 394.

In *Cornfeldt v. Tongen*, 262 N.W.2d 684, 697 (Minn.1977), this court upheld the trial court's exclusion of two medical experts' testimony. The court observed, however, that the exclusion resulted in no prejudice to plaintiff and it set out its policy on exclusion of expert testimony:

[W]e caution trial courts from readily excluding expert testimony in malpractice cases for inadvertent failure to disclose that testimony during discovery. Exclusion is justified only when prejudice would result. * * * When the failure to disclose was not willful, courts should consider alternative methods short of exclusion for preventing prejudice, e.g., granting a continuance and assessing costs against the offending party, * * * or limiting the subject matter of the testimony to matters already disclosed * *. It must not be forgotten during our efforts to ensure compliance with discovery rules that the judicial process is an attempt to seek the truth. We should not unduly hamper that search by excluding relevant evidence where other means are available to protect a party from the effects of an inadvertent failure to disclose. Trial courts must have discretion to determine the sanction appropriate to a violation of the discovery rules, for they are in the best position to assess the degree of prejudice that will arise from the violation and the efficacy of the remedies available that may prevent prejudice from resulting. But where the testimony of an expert is necessary to establish the proponent's cause, as in a malpractice case, and where the failure to disclose was inadvertent, perhaps because of the expert's reluctance to testify against his colleagues, the exercise of that discretion should be tempered by an effort to seek a solution short of exclusion that will accommodate the competing interests inherent in the discovery rules and the adjudicative process itself.

*Id.* at 697–98 (citations omitted).

The next problem facing the trial court was plaintiff's failure to detail interrogatory answers regarding content and factual bases of experts' opinions. Plaintiff's answers to defendant's interrogatories merely stated that his experts would testify that the injection was negligently given and that it should have been given in the proper manner. Counsel's reason for the cursory response was that since she had been able to retain Dr. Tulloch only on the eve of trial, she had no information on which to base more complete answers.

██ Expert interrogatories are controlled by Minn.R.Civ.P. 26.02(4)(A)(i), which provides:

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

A party thus has an absolute right to a summary of the grounds for each opinion held by an opponent's expert. *See* 4 J. Moore, Moore's Federal Practice ¶ 26.66[3] (1984). Inadequate answers may warrant sanctions by the trial court. As previously noted, however, suppression of expert testimony is a serious sanction and should be imposed only in the most compelling circumstances and then only after careful consideration of the following factors:

(1) the extent of preparation required by an opposing party in preparing for cross-examination or rebuttal of expert witnesses;

(2) when the expert agreed to testify;

(3) when the party calling the expert notified the opposing party of the expert's availability;

(4) when the attorney calling the expert assumed control of the case;

(5) whether a party intentionally and willfully failed to disclose the existence of a trial expert; and

(6) whether the opposing party sought a continuance or other remedy.

*See* 2 D. Herr & R. Haydock, Minnesota Practice, § 26.20 (1985) (citing *Boland*, 257 N.W.2d 384; *Phelps*, 253 N.W.2d 390; *Fritz v. Arnold Manufacturing Co.*, 305 Minn. 190, 232 N.W.2d 782 (1975)). ·

██ This is not a case in which counsel's dereliction in preparing answers to interrogatories and in identifying expert witnesses is inexcusable. Plaintiff's counsel took over the file only a year before it was called for trial and she had difficulty finding an expert who would testify on her client's behalf. Dr. Tulloch agreed to testify only a couple of weeks before trial. Her failure to notify defendant of her expert's testimony was not intentional. Furthermore, we do not believe that defendant was substantially prejudiced by the untimely and inadequate disclosures. The only issue in this case is whether the nurse gave plaintiff the injection in the wrong place. It would not be difficult for defendant to anticipate the expert's testimony and prepare its cross-examination. This is not to say that some sort of sanction short of suppression is not warranted. For instance, the trial court could have again continued the trial and imposed attorney fees on counsel or it could have limited the experts' testimony to the matter revealed in the deposition.

██ The final factors the trial court had to consider were the work product claims made by plaintiff's counsel. "Work product" is defined as an attorney's mental impressions, trial strategy, and legal theories in preparing a case for trial. *See National Texture Corp. v. Hymes*, 282 N.W.2d 890, 896 (Minn.1979). It has long been the rule in Minnesota that such work product is not discoverable. *See Brown v. St. Paul City Railway*, 241 Minn. 15, 35, 62 N.W.2d 688, 701 (1954); Minn.R.Civ.P. 26.02(3). However, materials prepared in anticipation of litigation that do not contain opinions, conclusions, legal theories, or mental impressions of counsel are not work product and are discoverable under Minn.R. Civ.P. 26.02(3). Discovery of trial preparation materials requires of the party requesting them a showing of substantial need and inability to obtain the information by other means. *Id.*

Counsel for plaintiff claimed that the medical records reviewed by Laven and Dr. Tulloch contained her personal notations which fell within the work product rule. She explained to defense counsel and to the trial court that she had already provided counsel with copies of everything she showed to her witnesses, she just had no clean copies to turn over to counsel at the deposition.

■ The next document at issue was the report prepared by Laven and submitted to plaintiff's counsel. She objected to defense counsel's request at Laven's deposition that she turn over the report, posing a work product objection. Technically speaking, the report is not work product but its discoverability is governed by Minn.R. Civ.P. 26.02(4) which reads:

> Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision 26.-02(1) of this rule and acquired or developed in anticipation or for trial, may be obtained *only* as follows: * * *

The rule goes on to say that the contents of the report are discoverable only by interrogatory and, if necessary, deposition, but not by production of documents. Although defense counsel in this case asked for and was denied permission to see the report, he never asked the witness what was contained in it. That question is permitted under the rules.

■ The final document at issue is Dr. Tulloch's opinion letter to plaintiff's counsel. This letter is also governed by Rule 26.02(4). Dr. Tulloch stated in his deposition that the opinion expressed in the letter was the same as the opinion he held in the deposition. After reviewing the letter, the trial court found that his opinion, in fact, differed. The court apparently viewed plaintiff's counsel's refusal to turn over the document as an obstructionistic tactic and held it to be a violation of Minn.R.Civ.P. 35.04. That rule provides in part:

> When medical privilege has been waived by a party under Rule 35.03, such party within ten days of a written request by any other party,
> a) shall furnish to the requesting party copies of all medical reports previously or thereafter made by any treating or examining medical expert * * *.

Dr. Tulloch, however, was not a treating or examining physician. His sole purpose was to review the information available and give expert testimony.

■ Given the facts and circumstances of this case, we hold that the trial court

abused its discretion in suppressing both experts' testimony. It is clear that counsel for plaintiff had at least a colorable claim of nondiscoverability of the documents whose production she objected to. She was entitled to at least an in camera inspection of the documents. As we expressed in *Firoved,* only truly reprehensible conduct by an attorney will warrant dismissal of his or her client's case. She made a good faith effort to comply with defense counsel's discovery request while at the same time protecting the rights of her client. The trial court should have considered the inherent difficulty in preparing a case of this nature and the fact that at the time this case came on for trial, plaintiff's counsel was a relatively inexperienced attorney. Since defendant was not prejudiced by the pretrial procedural irregularities, we hold that the rulings requiring dismissal were an abuse of the trial court's discretion.

Affirmed.

SIMONETT, J., concurs specially.

COYNE, J. took no part in the consideration or decision of this case.

SIMONETT, Justice (concurring specially).

The court says this is not a case where counsel's "dereliction" in answering interrogatories is inexcusable. I see no excuse, however, for the unresponsive answers. Plaintiff's answers revealed nothing of the identity of "Steven Lavin, R.N." or of the substance of his expected testimony, even though plaintiff had that information. It is no defense to argue that defendant could have deposed Lavin. Once the clerk set a trial date, the difficulties in finding a medical expert were overcome, and while the time was then short, Dr. Tullock had reviewed the documentary evidence, agreed to testify, and corresponded with plaintiff's counsel about his opinions. Interrogatories can and should be a useful, relatively inexpensive discovery device, but unfortunately this seems to be true only in theory. Too often the art of answering interrogatories

seems to be to provide answers that give nothing away.

Because the medical expert was absolutely essential to plaintiff's case and defendant could show no undue prejudice, the trial court quite properly handled the problem of the unresponsive interrogatory answers by postponing the trial a day and ordering depositions at plaintiff's expense. I agree that what happened at the depositions did not warrant dismissal of the lawsuit.