Dawn Groh **KRAUSHAAR, et al., Appellants,**

v.

**AUSTIN MEDICAL CLINIC P.A., et al., St. Olaf Hospital, Respondents.**

No. CO–85–2382.

Court of Appeals of Minnesota.

Sept. 16, 1986.

Review Denied Nov. 19, 1986.

Warren F. Plunkett, Warren F. Plunkett & Associates, Austin, for Dawn Groh Kraushaar.

James R. Gowling, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, for Austin Medical Clinic P.A., et al.

Paul C. Peterson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for St. Olaf Hosp.

Considered and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

### OPINION

HUSPENI, Judge.

Appellants Dawn Groh Kraushaar and Michael G. Kraushaar commenced this medical malpractice and negligence action against respondents St. Olaf Hospital (Hospital) and against Austin Medical Clinic, P.A. and four of its physicians, Drs. Frank T. Razidlo, Fred H. Bogott, James W. Dennis, and I.A. Hesla (Clinic). The Kraushaars appeal from the trial court's grant of summary judgment to the Hospital and from its dismissal of their claim against the Clinic and its physicians. We affirm the grant of summary judgment, but reverse the dismissal and remand for trial on the claim against the Clinic and its physicians.

### FACTS

Complaining of abdominal pain, Dawn Kraushaar sought care and received treatment from the Clinic beginning in September 1981. At the advice of the physicians, she eventually entered the Hospital and underwent an exploratory laparotomy on May 28, 1982. The surgery was performed by Dr. Dennis, who had staff privileges at the Hospital. During the operation, Dr. Dennis discovered that Dawn Kraushaar had a severe pelvic infection which required him to remove adhesions and drain abscesses. While removing an adhesion, he inadvertently removed small portions of her infected fallopian tubes. The Kraushaars allege that, as a result, Dawn Kraushaar is permanently sterile.

In March 1984, this action was commenced. The Kraushaars allege that the Clinic and its physicians negligently diagnosed and treated Dawn Kraushaar's condition. Their only claim against the Hospital is that it negligently granted staff privileges to Dr. Dennis and allowed him to operate when it knew that he was missing the tip of his right index finger.

On March 6, 1985, the Clinic moved to compel discovery, specifically requesting disclosure of the names of all of the experts the Kraushaars intended to call at trial. On March 22, the trial court ordered the Kraushaars to disclose by March 29 "the names of all doctors who will testify" at trial, and set the trial date for May 13. In response to this order, the Kraushaars disclosed that Dr. Kenneth Crabb would be testifying on their behalf.

On April 23, a hearing was held in response to a motion by the Hospital for summary judgment. Based on the pleadings, depositions, and affidavits submitted, the trial court concluded that the Kraush-

aars had failed to come forward with any evidence in support of their allegation that the Hospital had been negligent in granting Dr. Dennis staff privileges even though it knew he was missing a fingertip. Finding that no genuine issue of material fact existed, the trial court granted the Hospital's motion for summary judgment.

On Friday, May 10, three days before trial was to begin, the Kraushaars' attorney presented a handwritten note to the Clinic's attorney indicating that he intended to call additional medical experts during trial: Dr. Daniel Foley, and three treating physicians, Drs. C.E. Johnson, L.A. Aaro and H. Mori. The note did not state the intended substance of these experts' testimony and listed the qualifications of only Dr. Foley.

On Monday, May 13, the morning trial was to begin, the Clinic made several motions in limine. It first sought to prohibit the Kraushaars from calling the four experts disclosed only three days before. The Kraushaars' attorney explained that he had not previously disclosed the identity of Dr. Foley because he did not know he would need an additional expert witness until he discovered that Dr. Crabb had had an ex parte contact with the Clinic's attorney and might not testify on the Kraushaars' behalf.

The trial court ruled that these witnesses would not be allowed to testify because the Clinic had no opportunity to discover their opinions and because the Kraushaars had presented no valid reason for their delay in disclosure. The trial court indicated, however, that the Kraushaars would be allowed to utilize three of these experts, who were identified as treating physicians, for the limited purpose of laying the foundation for medical records prepared by or mentioning these doctors. None of the four witnesses would be allowed, however, to give a medical opinion as to whether the

physicians or the Clinic had acted with reasonable care.

The trial court next denied the Clinic's motion to exclude the testimony of Dr. Crabb, who was the Kraushaars' only remaining witness. Although encouraged by the trial court to proceed with trial, the Kraushaars' attorney indicated that he would not call Dr. Crabb because he had been "tampered with."[1] In response, the Clinic moved for dismissal because the Kraushaars now had no expert witnesses and would be unable to make a prima facie case. The Kraushaars' attorney initially voiced an objection, but then agreed that he could not continue and joined in the Clinic's motion to dismiss. The trial court granted the motion for dismissal, having concluded that the Kraushaars' claim of witness tampering had "no merit whatsoever" and noting that the Kraushaars' attorney had joined in the motion.

The Kraushaars' subsequent motion to set aside the dismissal or for a new trial was denied by the trial court. Judgments were entered on both the grant of summary judgment to the Hospital and on the order to dismiss the claim against the Clinic. This appeal followed.

## ISSUES

1. Did the trial court properly grant summary judgment to the Hospital?

2. Did the trial court abuse its discretion in prohibiting the testimony of four of the Kraushaars' experts because not timely disclosed, and subsequently in dismissing the Kraushaars' claim against the Clinic and its physicians for lack of prosecution?

## ANALYSIS

### I.

■ The Kraushaars never asserted that the Hospital's employees were in any way

---

1. These allegations of tampering were based on a chance meeting Dr. Crabb had with the Clinic's attorney at the St. Paul Athletic Club. During this brief encounter, the attorney commented that he would be seeing the doctor at the upcoming trial. Dr. Crabb apparently acted surprised and responded that he did not know what the attorney was talking about and that he was not going to be testifying at any malpractice trial. Several affidavits were submitted as to the extent and contents of the conversation between Dr. Crabb and the Clinic's attorney.

negligent or that the Hospital was vicariously liable for the acts of the four physicians employed by the Clinic. Their sole claim was that the Hospital was negligent in granting surgical staff privileges to Dr. Dennis and in allowing him to operate on Dawn Kraushaar when it knew that he was right handed and that he was missing the tip of his right index finger.

In granting summary judgment to the Hospital, the trial court considered the pleadings, the depositions of the physicians and of the Kraushaars, and five affidavits filed by the Hospital in support of its motion. These affidavits, submitted by other physicians who have worked with Dr. Dennis and by the Hospital administrator who hired him, are all favorable to Dr. Dennis and do not support an assertion of negligence against the Hospital.

In opposition to the motion, the Kraushaars admit that they relied solely upon the affidavit submitted by Dr. Dennis. In this affidavit, Dr. Dennis states that he has full manual dexterity in his right index finger; that he has successfully performed more than 1,000 operations; and that the missing tip of his right index finger has never hindered his surgical performance. His deposition similarly contains no statements which suggest that the Hospital was negligent in granting him full surgical staff privileges either because he is missing a fingertip or because he is otherwise not qualified.

Minn.R.Civ.P. 56.05 states in part:

When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

A genuine issue of fact "must be established by 'substantial evidence.' * * * The standard is not defined, but it has been applied to require evidence sufficient to avoid a directed verdict at trial," and "refers to legal sufficiency and not quantum of evidence." *Murphy v. Country House, Inc.*, 307 Minn. 344, 351–52, 240 N.W.2d 507, 512 (Minn.1976).

Thus, a party does have a burden to present some evidence tending to establish a genuine issue for trial.

The Kraushaars failed to present any evidence suggesting that the Hospital had somehow been negligent in granting staff privileges to a physician who was missing part of a finger. Such conduct is far from negligent as a matter of law. Because there was no genuine issue of material fact for trial, summary judgment was properly granted to the Hospital.

## II.

The Kraushaars contend that exclusion of their experts' testimony was an abuse of discretion because their delay in disclosure of these proposed medical experts was excusable. The Kraushaars first claim that it was impossible for them to disclose the name of Dr. Foley earlier because they did not know they would need his testimony until after the Clinic's attorney had "tampered with" Dr. Crabb and influenced him not to testify. The evidence, however, suggests that Dr. Crabb did not intend to testify but merely intended to give an informal opinion.

The evidence also suggests the Kraushaars' attorney's reliance on Dr. Crabb's availability to testify was misplaced.[2] We

2. At the May 13 hearing, the Clinic's attorney submitted an affidavit characterizing his conversation with Dr. Crabb. The contents of this affidavit were subsequently confirmed in an affidavit submitted by Dr. Crabb himself in connection with the Kraushaars' post-trial motion. In his affidavit Dr. Crabb further stated "I never agreed, directly or impliedly, to testify as an expert medical witness. * * * I was not inter- ested in testifying in any malpractice case. * * [Kraushaars' attorney] was informed that I would not testify * * * but that I would be willing to consult and evaluate issues presented in the case on an informal basis and to give * * whatever behind the scenes assistance I deemed proper." The record also reflects that after an April 3, 1985 meeting between Dr. Crabb and the Kraushaars' attorney, the doctor would not

believe that the Kraushaars' attorney had a duty to ascertain the exact status of Dr. Crabb as a witness. In view of the evidence concerning Dr. Crabb's role in the Kraushaars' case, it was unrealistic for their attorney to assume that Dr. Crabb was willing and available to testify. Further, the Kraushaars' attorney's attempt to seize upon a chance meeting between Dr. Crabb and a defense attorney as the basis for "tampering" was disingenuous. We conclude that the Kraushaars' attorney should have realized the precarious circumstances surrounding Dr. Crabb's testimony, and should have disclosed the name of Dr. Foley in a more timely fashion.

■ The Kraushaars next assert that disclosure of the experts other than Dr. Foley was unnecessary because they were treating physicians and involved in the care and treatment of Dawn Kraushaar. They argue that under Minn.R.Civ.P. 26.02(4), a party need not disclose the identity and opinions of a treating physician because the rule applies only to facts and opinions "acquired or developed in anticipation of litigation or for trial" and that these treating physicians should be viewed as ordinary witnesses.

The Clinic agrees that while rule 26.02(4) may not apply to discovery involving treating physicians, disclosure of this information was still required under other routine discovery procedures which it utilized. *See* Minn.R.Civ.P. 26.02(1), and 33.02. The Clinic duly submitted interrogatories to the Kraushaars, but received only the following vague responses:

INTERROGATORY NO. 14:

With respect to each person known to you or your attorneys whom you expect to call at trial as an expert witness with respect to any issue herein involved, including but not limited to the propriety of the medical care and treatment rendered by defendant:
[Response] Unknown at this time but plaintiff's investigation in this regard is continuing.

answer the attorney's phone calls or letters and

INTERROGATORY NO. 15:

With respect to each person known to you, your agents, investigators or attorneys having knowledge of any fact relevant to any of the issues herein involved:
[Response] The defendants are aware of all of the care and treatment received by Dawn Groh Kraushaar, including the care received by her at the Mayo Clinic and Methodist Hospital in Rochester, Minnesota.

The Kraushaars failed to supply any additional information as to their intended trial experts, and the Clinic eventually brought a motion to compel discovery. With trial set for a few months away, the trial court issued an order requiring the Kraushaars to supply "the names of all doctors who will testify," as well as their medical background and a summary of their expected testimony no later than March 29. In light of the interrogatories and the trial court's order, we conclude that the Kraushaars were obligated to disclose the names of even the treating physicians they intended to call as witnesses.

In two lengthy and commendably incisive memoranda attached to its orders excluding the experts' testimony and dismissing the Kraushaars' action against the Clinic, the trial court demonstrates its total familiarity with and understanding of the facts of the case. We are cognizant of the frustration a trial court experiences when confronted with these circumstances and ensuing delays. Nonetheless, we must review the ultimate sanctions imposed by the trial court in the context of existing case law and the principles enunciated therein.

■ When a party fails to properly notify an opponent of an expert who will testify at trial, the trial court has the discretion to determine what sanctions will be imposed. The testimony may be excluded if its admission will result in prejudice to the other side. *Cornfeldt v. Tongen*, 262 N.W.2d 684, 697 (Minn.1977), *modified on other grounds*, 295 N.W.2d 638 (Minn. 1980). Factors to consider in determining

became virtually impossible to contact.

the existence of prejudice and the appropriateness of a sanction include:

(1) the extent of preparation required by an opposing party in preparing for cross-examination or rebuttal of expert witnesses; (2) when the expert agreed to testify; (3) when the party calling the expert notified the opposing party of the expert's availability; (4) when the attorney calling the expert assumed control of the case; (5) whether a party intentionally and willfully failed to disclose the existence of a trial expert; and (6) whether the opposing party reasonably sought a continuance or other remedy.

*Dennie v. Metropolitan Medical Center,* 387 N.W.2d 401, 406 (Minn.1986).

█ In the present case, the trial court made no finding as to whether the failure to disclose the experts' names was intentional or willful. Although we have noted that the experts' names should have been disclosed, we also note that it appears from the record that the untimely disclosures were due solely to the acts of the Kraushaars' attorney.

Courts are often reluctant to bar a party from trial on the merits because of errors by his attorney. In *Firoved v. General Motors Corp.,* 277 Minn. 278, 152 N.W.2d 364 (1967), the supreme court reversed a trial court's dismissal of a plaintiff's cause of action for failure to prosecute, noting that "[r]esponsibility for such delays as can be charged to plaintiff were not caused by his personal neglect but by the neglect and delinquencies of his counsel." *Id.* at 284–85, 152 N.W.2d at 369. We find the same to be true here. There is no indication that the Kraushaars themselves were involved in the unfortunate circumstances regarding Dr. Crabb's willingness to testify or in the failure to timely disclose names of the other experts. Yet the harsh, irremedial consequences which result from the ultimate dismissal fall most heavily upon the Kraushaars themselves.

A review of recent case law illustrates both a lack of tolerance for unconscionable delay and noncooperation, and a sensitivity to the fact that there are more appropriate sanctions available than exclusion of critical expert testimony and dismissal of a plaintiff's case which often follows that exclusion as a matter of course. These conflicting concerns are addressed by the supreme court in *Firoved:*

In these times of overcrowded court calendars, excessive and inexcusable delays in the disposition of a case seriously affect the disposition of other cases ready for trial and, in many other ways, disrupt the fair administration of justice. Thus a broad measure of discretion must be left to trial judges to enforce calendar rules, to prevent unnecessary and inexcusable delays, and to promote the public interest in keeping court dockets free of stale claims.

*Id.* at 284, 152 N.W.2d at 369 (footnote omitted). In reversing the trial court's dismissal of the action, however, the *Firoved* court stressed that:

An order of dismissal on procedural grounds runs counter to the primary objective of the law to dispose of cases on the merits. Since a dismissal with prejudice operates as an adjudication on the merits, it is the most punitive sanction which can be imposed for noncompliance with the rules or order of the court or for failure to prosecute. It should therefore be granted only under exceptional circumstances.

\*    \*    \*    \*    \*    \*

[W]e must be mindful that the policy which seeks to dispose of litigation on the merits rather than procedural grounds is, except in extraordinary circumstances, of overriding importance.

*Id.* at 283–84, 152 N.W.2d at 368–69.

In *Dennie,* decided after the trial court's decision in this case, the Minnesota Supreme Court affirmed this court's reversal of a trial court's refusal to allow plaintiff's expert witnesses to testify because of untimely disclosure of those witnesses. The *Dennie* court noted the many discovery problems present in that case but cautioned:

It must not be forgotten during our efforts to ensure compliance with discovery rules that the judicial process is an attempt to seek the truth. We should not unduly hamper that search by excluding relevant evidence where other means are available to protect a party from the effects of an inadvertent failure to disclose. * * * [W]here the testimony of an expert is necessary to establish the proponent's cause, as in a malpractice case, and where the failure to disclose was inadvertent, perhaps because of the expert's reluctance to testify against his colleagues, the exercise of that discretion should be tempered by an effort to seek a solution short of exclusion that will accommodate the competing interests inherent in the discovery rules and the adjudicative process itself.

387 N.W.2d at 405 (quoting *Cornfeldt v. Tongen*, 262 N.W.2d 684, 697–98 (Minn. 1977)). We believe the circumstances in the present case are not sufficiently distinguishable from those in *Dennie* to permit a result contrary to the one reached there. In so determining, we recognize that we must consider both the prejudice which results to the Kraushaars upon exclusion of testimony and ultimate dismissal and the prejudice which results to the Clinic by granting a continuance.

As indicated previously, the prejudice befalling the Kraushaars was substantial. When the trial court ordered exclusion of the four expert witnesses' testimony, it may have appeared that Dr. Crabb was still available as an expert witness. The trial court, in fact, did deny the Clinic's motion to exclude Dr. Crabb's testimony and requested that the Kraushaars proceed. Yet it soon became apparent that Dr. Crabb would not have testified willingly. The Kraushaars' refusal to call Dr. Crabb cannot be deemed unreasonable under the circumstances. Neither can their joinder in the motion to dismiss be viewed as waiving any of the arguments they raise here. Expert testimony was required. They had no expert and, therefore, it would have been impossible for them to continue to prosecute their action.

Because the trial court did not specify that the dismissal was without prejudice, the dismissal "operates as an adjudication upon the merits." Minn.R.Civ.P. 41.02(3). Such a dismissal not only terminates the pending action but prohibits future actions. *See Glick v. Ballentine Produce, Inc.*, 397 F.2d 590, 593 (8th Cir.1968). Even if the trial court had specified that the dismissal in this case was without prejudice, the Kraushaars' action against the Clinic and its physicians is now barred by the applicable statute of limitations.

The only prejudice claimed by the Clinic is that of inconvenience and added expense caused by delay. No attempt was made to establish that some substantive right or advantage would be lost or imperiled by grant of a continuance. Nor does it appear that the Clinic cannot be adequately compensated for any tangible prejudice it might suffer. Sanctions such as those recognized by the supreme court in *Cornfeldt*, 262 N.W.2d at 697 and *Firoved*, 277 Minn. at 285–86, 152 N.W.2d at 370 are available here. While we empathize with the trial judge in the exasperating circumstances of this case, we conclude that remand for trial on the merits with institution of appropriate sanctions against the Kraushaars is required.

## DECISION

The trial court's grant of summary judgment to the respondent Hospital is affirmed.

The trial court's dismissal of appellants' action against the Clinic and its physicians is reversed. Their claim that the Clinic and its physicians negligently diagnosed and treated Dawn Kraushaar's condition is remanded for trial on the merits.

Affirmed in part, reversed in part and remanded for trial.