## SANDRA WALTZ KRECH v. EDWARD ERDMAN.

233 N. W. 2d 555.

August 22, 1975—No. 45026.

*Douglass, Bell, Donlin, Shultz & Petersen* and *John C. Wall-raff,* for appellant.

*Robins, Davis & Lyons* and *Leo F. Feeney,* for respondent.

Heard before Rogosheske, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

PER CURIAM.

This is an action for damages arising out of personal injuries sustained by plaintiff when her automobile was struck from behind by defendant's truck. The jury awarded plaintiff $22,500, and defendant appeals from an order denying him a new trial. We affirm.

Defendant asserts the following grounds for reversal:

(1) The court permitted plaintiff to amend the ad damnum clause of her complaint, increasing it from $23,400 to $75,000.

(2) Although plaintiff did not disclose the identity of a medical expert until the day before trial, the court refused to suppress his evidence.

(3) The court received hospital records which were not disclosed by plaintiff's answers to defendant's interrogatories.

(4) The court commented on the availability of a witness to clarify facts elicited from plaintiff by defendant on cross-examination for impeachment purposes.

(5) One of plaintiff's doctors testified concerning a myelogram examination of plaintiff which was not, in fact, conducted.

(6) Defendant asserts that the damages awarded are excessive.

1. Defendant's insurance coverage was limited to $10,000.

The original prayer was for $23,400. Defendant, prior to trial, had been fully advised of his right to retain independent counsel. Although defendant argues that it was an abuse of discretion to permit an increase of the ad damnum clause because it gave the plaintiff a tactical advantage, the fact remains that the amount of the verdict was less than the amount sought in the original complaint. This was a discretionary matter with the court, and we find no prejudice resulted. Bastianson v. Forschen, 293 Minn. 31, 36, 196 N. W. 2d 451, 455 (1972).

2. Plaintiff did not disclose until the day before trial that a neurologist would testify on her behalf. Defendant sought to suppress this testimony, and complains that the refusal to do so was highly prejudicial because the doctor was one of only two experts to testify that plaintiff sustained permanent injuries.

We held in Gebhard v. Niedzwiecki, 265 Minn. 471, 477, 122 N. W. 2d 110, 114 (1963):

"* * * [W]here the after-acquired information is of a material nature or where it will render the answers originally given untruthful, unreliable, or inaccurate, the obligation to disclose such after-acquired information continues.

*　*　*　*　*

"* * * In cases where there is an honest mistake [in failing to disclose] and the harm can be undone, it may frequently occur that a continuance or some other remedy would be adequate but, where the violation is willful and the party guilty of the violation seeks to take advantage of it at a time when the harm cannot be undone, suppression of the evidence may very well be the proper and only available remedy."

As applied to the instant case, the trial court might well have invoked the sanction of suppression had he found that defendant was, to any appreciable degree, prejudiced. We reiterate what was said in Gebhard concerning the ongoing obligation of counsel to keep his adversary apprised of the changes in circumstances which made it necessary to call witnesses or introduce

evidence not previously disclosed. Trial courts have a duty to suppress such evidence where counsel's dereliction is inexcusable and results in disadvantage to his opponent. In situations where the failure to disclose is inadvertent but harmful, the court should be quick to grant a continuance and assess costs against the party who has been at fault. Here, however, defendant did not seek a continuance upon learning that the doctor would testify. The trial court was justified in finding that defendant did not sustain prejudice which was attributable to his having had only brief notice of the doctor's appearance. Muckler v. Buchl, 276 Minn. 490, 502, 150 N. W. 2d 689, 697 (1967).

3. With respect to the introduction of hospital records not disclosed in answers to interrogatories, it is enough to say counsel for defendant made no objection and, indeed, used the records effectively to rebut testimony introduced by plaintiff. Muckler v. Buchl, *supra*; Cook Seed Co. v. Welker, 288 Minn. 412, 181 N. W. 2d 870 (1970).

4. In cross-examining plaintiff, counsel for defendant called attention to the fact that medical records of the University of Minnesota Health Service contained a statement by an examining doctor that plaintiff attributed some of her disability to her activity while playing basketball. Plaintiff denied having made that statement, and defendant's counsel then asked her if she had taken any steps to have the record corrected. Thereupon, plaintiff's counsel stipulated that the University doctor could be made available to defendant, to which proposal defendant objected, prompting the court to state: "Well, I don't know. If it's important I take it that the doctor can be called." Defendant complains that the court's comment adversely affected his attempt to impeach plaintiff. However, we regard the court's statement as responsive to the objection, and the impact on the jury, if any, trivial and inconsequential.

5. There is no merit to defendant's claim that he was prejudiced by the statement by one of plaintiff's doctors that she had been given a myelogram examination when, in fact, she had not.

Not only did the doctor testify that the examination was negative, but the fact that the examination was not given was made clear to the jury by other witnesses.

6. With respect to the question of whether the award was excessive, it is of some significance that the accident occurred in May 1968 and the verdict was not rendered until January 1974. Although the special damages apparently were less than $500 and the award is generous, we are of the opinion that there is competent medical testimony to support the verdict. One doctor gave plaintiff a 20-percent disability of the cervical spine, and another doctor testified her condition was permanent. At the time of trial, plaintiff's injuries were not seriously disabling, but the jury could find that she continued to have substantial pain and discomfort in the area of her shoulder and neck. Although the case is a close one on the issue of damages, the verdict has the approval of the trial court and on this record we are reluctant to disturb it.

Affirmed.