Leland M. PHELPS, et al., Respondents,

v.

BLOMBERG ROSEVILLE CLINIC, a partnership, and Richard H. Hedenstrom and Lowell W. VanDeRiet, individually, Appellants.

No. 46526.

Supreme Court of Minnesota.

April 29, 1977.

Altman Geraghty Mulally & Weiss, James W. Kenney and James R. Gowling, St. Paul, for appellants.

John F. Bonner, Jr., and Stephen B. Bonner, Minneapolis, for respondents.

MacLAUGHLIN, Justice.

This is a medical malpractice action in which a jury found defendant doctors negligent in their care and treatment of plaintiff Leland M. Phelps. Defendants appeal from a denial of their motion for judgment notwithstanding the verdict or a new trial, and from the judgment entered. Because we have concluded that there was no prejudicial error during the course of the trial, as alleged by defendants, we affirm.

Defendants Dr. Richard H. Hedenstrom and Dr. Lowell W. VanDeRiet are general practitioners, associated with defendant Blomberg Roseville Clinic (hereafter the Clinic).[1] Plaintiffs, Leland M. Phelps and Marion L. Phelps, are husband and wife who had been patients of the Clinic since 1964.

During the summer of 1971, Phelps noticed some small growths on his penis under the foreskin and went to the Clinic on August 5, 1971, where he was seen by Dr. Hedenstrom. Since he was not sure whether the lesions were warts or tumors, Dr. Hedenstrom decided to refer Phelps to Dr. David W. Anderson, St. Paul, a specialist in dermatology. Phelps made an appointment with Dr. Anderson and on August 11, 1971, Dr. Anderson removed some small warts from Phelps' eyelid and took a biopsy of one of the penile lesions, sending it to the Charles T. Miller Hospital for examination by the pathology department. Soon thereafter a pathology report was sent to Dr. Anderson, diagnosing the lesion as a non-malignant seborrheic keratosis.

Dr. Anderson proceeded to treat the lesions with a 20-percent solution of podophyllin during six subsequent visits by Phelps, from August 18, 1971, to November 10, 1971. On August 27, 1971, Dr. Anderson sent a letter to Dr. Hedenstrom who had referred Phelps, stating that the several lesions on the penis were warts and "one lesion was biopsied to make sure it was a wart and later these were treated with podophyllin."

On December 30, 1971, Phelps returned to the Roseville Clinic having noticed no

---

1. Defendants Ravits, Anderson, and Leahy, P.A., and Dr. David W. Anderson, individually, were also named as defendants in the complaint. Before trial, they moved for and were granted summary judgment by the district court on the ground that the suit against them was barred by the statute of limitations.

change in the largest lesion and with complaints of decreased libido because of the pain caused by the treatments. He told Dr. Hedenstrom, whom he saw on that date, that he was having difficulty getting to Dr. Anderson's office and asked to continue the treatments at the Clinic. Dr. Hedenstrom agreed to resume responsibility for the treatments and applied podophyllin. Phelps had several subsequent treatments of podophyllin applied by Dr. Hedenstrom or by Dr. VanDeRiet.

On June 8, 1973, Phelps complained of the frequency of his visits for treatment and the time lost from his employment. Dr. Hedenstrom agreed that Phelps could continue the treatment himself at home and supplied him with a bottle of podophyllin and some Q-tips to use as applicators. Dr. Hedenstrom said that if the treatments were not successful Phelps should return to the Clinic, and wrote on Phelps' chart "Recheck in one month. Not one hundred percent."

From June 8, 1973, Phelps applied the podophyllin solution himself at 2-week intervals, as directed by Dr. Hedenstrom. In the fall of that year, Phelps noticed a change in the appearance of the lesion and thought it was finally "breaking up." However, after becoming concerned when he noticed a dark brown spot, Phelps returned to the Clinic on March 5, 1974, where he saw Dr. VanDeRiet. Dr. VanDeRiet immediately recommended that a new biopsy be taken and an excision was performed. Within a few days Phelps received a telephone call from Dr. VanDeRiet informing him that the lesion was malignant and had been diagnosed as squamous cell carcinoma.

Dr. VanDeRiet referred Phelps to Dr. Everett J. Duthoy, a specialist in urology. Phelps saw Dr. Duthoy and learned that he would have to undergo a partial penectomy. On March 29, 1974, Dr. Duthoy removed 2 inches of the distal end of Phelps' penis, and the inguinal lymph glands in his groin. In April 1974, as a result of metastasis to a lymph node in the left groin, Dr. Duthoy performed an exploratory operation removing 100 additional lymph nodes in Phelps' abdomen. In June 1974, a third operation was performed by a plastic surgeon to close the wounds in Phelps' groin which had not healed.

Thereafter, plaintiffs brought suit against the Clinic and against Drs. Hedenstrom and VanDeRiet, individually. They alleged that negligent and unskillful treatment by defendants over a period of many months had aggravated, caused, or created a malignancy which resulted in the partial penectomy and removal of the surrounding lymph glands, and sought damages as a result of these claims.

Drs. Hedenstrom and VanDeRiet denied any careless or negligent conduct and alleged that plaintiffs' loss or damage was beyond their control and that Phelps himself had been negligent in not following their instructions, causing the need for surgery and resulting damages.

A jury, by special verdict, found that Dr. Hedenstrom was 40 percent negligent, that Dr. VanDeRiet was 35 percent negligent, and that Phelps was 25 percent negligent. The jury found that Leland M. Phelps had sustained damages of $100,000 and that his wife, Marion L. Phelps, had sustained damages of $6,000. Judgment was entered against defendants in the sum of $79,500 and, following denial of defendants' motion for judgment notwithstanding the verdict or a new trial, this appeal was taken. Defendants have not argued that there was no negligence on their part, but have alleged several errors during the trial which they claim necessitate a new trial.

■ 1. The principal argument advanced by defendants is that the trial court erred in admitting testimony of a previously undisclosed expert medical witness.

As part of the pretrial discovery procedure defendants served interrogatories on plaintiffs' counsel calling for the disclosure of any expert medical witnesses whom plaintiffs intended to call in support of their claim of negligence. Plaintiffs an-

swered that they intended to call Dr. Leonard C. Arnold, a general practitioner from Chicago, Illinois, and Dr. Donal D. O'Sullivan, chief of the department of pathology at Augustana Hospital in Chicago. Plaintiffs' answers further stated the nature and substance of the testimony of each expert witness.

The trial began on Tuesday, September 9, 1975. On the afternoon of September 11, plaintiffs called Dr. O'Sullivan, the pathologist, but he was not permitted to express an opinion as to negligence. The trial court then recessed for 3 days until Monday, September 15.

On Monday morning, prior to the scheduled resumption of the trial, plaintiffs moved the trial court for permission to call an additional expert witness, Dr. Milton Seifert, a general practitioner from Excelsior, Minnesota. They explained that Dr. Seifert would testify on plaintiffs' behalf as to the standard of care of general practitioners in the community and as to defendants' departure from that standard of care in their treatment of Phelps. Defendants objected because it was the fourth day of trial, and because no notice had been given of Dr. Seifert's appearance in plaintiffs' answers to defendants' interrogatories.

Counsel for plaintiffs explained that although he had tried without success for the past 18 months to persuade Dr. Seifert and other local practitioners to testify on plaintiffs' behalf, it was only on Friday, September 12, that Dr. Seifert had finally agreed to meet with him, although Dr. Seifert was still unwilling to appear as an expert witness. However, on Saturday morning, September 13, Dr. Seifert met again with counsel for plaintiffs and decided that he would appear on plaintiffs' behalf after reviewing the hypothetical question which plaintiffs intended to ask.

The trial court granted the motion to allow Dr. Seifert to testify on plaintiffs' behalf. However, he restricted the scope of Dr. Seifert's testimony to matters which had already been disclosed to defendants with respect to the testimony of Dr. Arnold so that prejudice to defendants would be minimized as a result of the lack of notice. Counsel for defendants made no further motion and did not request a continuance or any opportunity to examine or depose Dr. Seifert before his appearance as a witness.

Subsequently, Dr. Seifert testified and was allowed to give his opinion as to the standard of care and defendants' departure from it. Dr. Arnold testified similarly on behalf of plaintiffs.

As part of the discovery procedure before trial, a party may, through interrogatories, require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the expert's facts and opinions, as well as a summary of the grounds for each opinion. See, Rule 26.02(4), Rules of Civil Procedure. This rule has as its basis the difficulty in cross-examining an expert at trial where there is a lack of general information regarding the nature and content of his opinion, and the need for proper trial preparation in anticipation of the expected testimony of opposing experts.

Our decisions have established the continuing obligation of a party who has responded to a request for discovery to keep his opponent apprised of any changes in circumstances which make it necessary to call witnesses or to introduce evidence not previously disclosed. We stated in *Gebhard v. Niedzwiecki*, 265 Minn. 471, 478, 122 N.W.2d 110, 115 (1963):

> "The application of this rule should not require the disclosure of every bit of information discovered after the answers are served, but should require that any information which is of a substantial nature and which will render the answers theretofore served untruthful, unreliable, or incomplete must be disclosed. Certainly, in a case such as this, the discovery of witnesses that a party intends to call comes within the area of information which must be disclosed.

\*     \*     \*     \*     \*     \*

" *  *  *  In cases where there is an honest mistake and the harm can be undone, it may frequently occur that a continuance or some other remedy would be adequate but, where the violation is willful and the party guilty of the violation seeks to take advantage of it at a time when the harm cannot be undone, suppression of the evidence may very well be the proper and only available remedy."

■ The trial court has a duty to suppress such evidence or testimony where counsel's dereliction is inexcusable and results in unjust surprise and prejudice to his opponent. *Krech v. Erdman,* 305 Minn. 215, 233 N.W.2d 555 (1975). However, we observed in *Krech* that even though such suppression is discretionary with the trial court and may be ordered if the opponent has been prejudiced to any appreciable degree, failure to suppress is not an abuse of discretion where the opposing party does not seek a continuance and fails to show prejudice from having had only brief notice of the appearance of an expert medical witness.

The trial court, in the instant case, might have invoked the sanction of suppression of Dr. Seifert's testimony if there had been an indication that defendants would be prejudiced to an appreciable degree. However, it was within the discretion of the trial court to allow Dr. Seifert to testify since there was no showing that plaintiffs' failure to disclose was willful or that it created undue prejudice which could not be controlled by limiting the scope of Dr. Seifert's testimony. We recently held in *Dorn v. Home Farmers Mutual Ins. Ass'n.,* 300 Minn. 414, 220 N.W.2d 503 (1974), that it did not constitute reversible error to allow testimony of an expert witness not listed in plaintiffs' answers to interrogatories where the record disclosed that plaintiffs had not intended to call the witness prior to trial and no prejudice to defendants was shown.

In this case plaintiffs' counsel notified counsel for defendants at the first practical opportunity of Dr. Seifert's availability and of plaintiffs' intention to call him as a witness if permitted to do so. Allowing Dr.

Seifert to testify on the ultimate negligence question of whether defendant doctors had failed to exercise the degree of care required was not prejudicial since defendants had been informed in plaintiffs' answers to interrogatories that they would have medical testimony to that effect, and the trial court limited Dr. Seifert's testimony to those matters. As stated previously there was no request for a continuance or other specific relief following the trial court's ruling.

We have vested trial courts with discretion to determine whether a witness whose identity was not disclosed in pretrial answers to interrogatories should be allowed to testify over objections by an opposing party. A party complaining of a discretionary ruling by the trial court must demonstrate that the ruling resulted in harm or prejudice. We hold that defendants have not met the burden of demonstrating that the trial court's discretionary ruling admitting the testimony of Dr. Seifert resulted in prejudice to their case.

■ 2. Defendants allege that certain comments made by Dr. Arnold in response to questions during his direct examination, and certain questions asked by plaintiffs' counsel to Dr. Arnold, brought matters before the jury which were cumulatively prejudicial. Both statements by Dr. Arnold and the questions by counsel concerned unproven allegations that the medicine prescribed by defendants for plaintiff's treatment could itself be a potential carcinogenic substance. In each instance objections were made by defendants and sustained by the trial court with directions that Dr. Arnold's statements be stricken from the record.

Although defendants made no motion for a mistrial, nor did they specifically raise this issue in their motion for a new trial, they now argue that these comments and questions were so prejudicial as to require a new trial. While it is certainly possible that a trial judge observing a trial might agree that statements and questions of this type are sufficiently prejudicial as to require a new trial, we are not persuaded on

appeal, based upon the record, that such prejudice occurred.

■ 3. The final issue raised by defendants is that the trial court erred in admitting testimony regarding the pathology report of the biopsy initially ordered by Dr. Anderson. Defendants argue that they had nothing to do with the biopsy or the report and that Mr. Phelps was not their patient at the time for purposes of treatment of the lesion. Therefore, they argue, this evidence was irrelevant and prejudicial so far as the case against them was concerned.

However, a copy of the letter from Dr. Anderson was in defendants' files, and they were treating the lesion with the same drug mentioned by Dr. Anderson when he notified defendants that a biopsy had been taken. Further, there was other testimony at trial which confirmed the pathology report that the lesion was not malignant at the time of the original biopsy. Since plaintiffs contended that the lesion had become cancerous during Phelps' treatment by defendants, the evidence in question was relevant because it helped to establish the non-malignancy of the lesion at the time of the original biopsy and pathology report.

We hold that the trial court properly exercised its discretion in allowing this testimony.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.