Kenneth L. FORD, et al., Respondents,

v.

The CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD CO., defendant and third-party plaintiff, Appellant,

v.

FARMERS UNION GRAIN TERMINAL ASSOCIATION, third-party defendant, Respondent.

No. 50309.

Supreme Court of Minnesota.

June 20, 1980.

Rider, Bennett, Egan & Arundel and Scott K. Goldsmith, Minneapolis, for defendant and third-party plaintiff, appellant.

John F. Bonner, Jr., and Nancy A. Miller, Minneapolis, for Ford, et al.

Rosenmeier & Simonett and John E. Simonett, Little Falls, for Farmers Union Grain Terminal Assn.

Heard before TODD, YETKA and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Kenneth L. and Pamela A. Ford brought this action against the Chicago, Milwaukee, St. Paul and Pacific Railroad ("the railroad") for injuries sustained by Kenneth Ford when the ladder on which he was working was hit by a train. The railroad impleaded the Farmers Union Grain Terminal Association ("the grain terminal"), which owned the property on which the accident occurred and which was obligated by contract to keep the tracks clear.

A jury trial was held before the Seventh Judicial District Court. The jury found Kenneth Ford 30% negligent, the railroad 50% negligent, and the grain terminal 20% negligent, and awarded $30,000 damages to Kenneth Ford and none to Pamela Ford. The trial court denied all post-trial motions and entered judgment as follows: for Kenneth Ford against the railroad for $21,000 ($30,000 less 30%); and for the railroad against the grain terminal for $6,000 (20% of $30,000). The railroad appealed the judgment and the order denying its post-trial motions. We affirm in part, reverse in part and remand for the entry of an amended judgment.

The issues presented are:

1. Did the trial court properly allocate damages between the railroad and the grain terminal?

2. Does the testimony of plaintiffs' physician as to an injury not disclosed in discovery necessitate a new trial?

■ The plaintiffs seek to raise as an issue the denial of their motions to join the grain terminal as a party defendant. However, it did not file a notice of review to preserve this issue as required by Minn.R. Civ.App.P. 106 so we decline to rule on the issue.

Kenneth Ford was employed by a contracting company in constructing a building for the grain terminal on grain terminal property adjacent to several sets of railroad tracts. The tracks were operated pursuant to a contract between the railroad and the grain terminal which prohibited the grain terminal from placing or permitting to be placed any obstacle within 8.5 feet laterally from the center of any track. At the time of this accident, Kenneth Ford was working on a ladder placed 2.5 feet from the nearest track. While he was working, a train knocked the ladder out from under him. He landed on his seat and was then struck in the head by the train.

The evidence indicates that railroad employees and Ford's construction crew had an arrangement or understanding between them. The railroad employees were well

aware of the construction activity. If there was material on or near the tracks when trains were being moved, the train would signal with a whistle or bell and slow down or stop until the construction crew cleared it off. This may have occurred as many as a hundred times. On this occasion, however, Ford and his co-worker heard no warning signal and the train did not stop.

The railroad crew members never objected to the placement of material near the track and did not report any clearance violation to the railroad company. The grain terminal also never advised Ford not to place any obstacles within 8.5 feet of the track centerline although it conceded that the ladder was an obstacle within the meaning of the railroad contract.

On the basis of the foregoing evidence, the jury found all parties negligent in the proportions set forth previously. It also specifically found that the grain terminal permitted the ladder to be placed or to remain within 8.5 feet of the tracks. Finally, it found that the railroad had acquiesced in the positioning of the ladder which, as discussed below, is relevant to whether the railroad may recover indemnity from the grain terminal.

The contract between the railroad and the grain terminal (referred to therein as "the Industry") provided as follows:

> 10. . . . The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employes, or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

The first clause is an indemnity agreement and the second clause provides for contribution between the parties if jointly negligent.

■ The railroad claims it is entitled to total indemnity from the grain terminal under the indemnity clause. However, the indemnity clause was designed to indemnify the railroad for "any act or omission *of the Industry*" and not to indemnify the railroad for its own negligence. Therefore, since the jury found the railroad 50% negligent and the grain terminal 20% negligent, the railroad would only be entitled to indemnity for the 20% attributed to the grain terminal company or $6,000.[1]

However, the railroad points to a long line of cases which have interpreted railroad contracts with identical or virtually identical language. Those cases hold that the railroad is entitled to total indemnity even where the railroad is found partially negligent. The cases reason that it is only where the railroad is found negligent that it would ever seek contribution and to hold otherwise would make the clause meaningless. Thus, so long as the railroad is not "actively" or "primarily" negligent, the courts have allowed recovery under the clause. *See, e. g., Steed v. Central of Georgia Railway*, 529 F.2d 833 (5th Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976); *Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902 (9th Cir. 1950).

In this case, however, the jury found the railroad 50% negligent and the grain terminal 20%. Thus, it cannot be said that this is a case where the railroad is held liable only because of the grain terminal's negligence. The reasoning of the cited decisions therefore does not apply so there is no basis for an award of full indemnity.

■ In addition, the jury's finding that the railroad acquiesced in the acts or omissions of the grain terminal would bar the railroad from indemnity. *See Jack v. Applebaum's Food Markets, Inc.*, 280 Minn. 247, 158 N.W.2d 857 (1968). The railroad argues that the defense of acquiescence should not have been submitted to the jury because it was not raised until after the

---

1. This is the amount awarded by the trial court. We cannot determine whether this was arrived at under the contract or by using the comparative fault percentages alone.

close of the evidence. However, it is clear that the evidence as to negligence included everything of relevance as to acquiescence because the railroad's negligence consisted primarily of its acquiescence in the hazard. While this does not prove that the issue was litigated by consent, it does show that the railroad was not prejudiced. Neither at trial nor in its brief does it indicate any additional evidence it would have submitted as to acquiescence. Thus, the railroad is barred from recovering under the indemnity clause.

■ Since the jury found both the railroad and the grain terminal negligent and since the railroad is not entitled to full indemnity, the clause allowing for equal contribution if jointly negligent would apply. That clause would allow the railroad to recover from the grain terminal one-half of the joint negligence, 35% or $10,500, rather than the $6,000 allowed by the trial court.

The clause calling for equal contribution for joint negligence is sufficiently explicit to allow reimbursement for the other party's negligence under *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838 (Minn. 1979). It is also eminently fair because, under different circumstances, the railroad might also have to pay more than its proportion of fault.

The contribution clause is not affected by the decision in *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977), requiring joint tort-feasors to bear losses in accordance with the jury's allocation of fault rather than by common law indemnity. *Tolbert* only overruled the fourth rule in *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960); the fifth rule allows for express contracts and was not overruled. *See Farmington Plumbing, supra*, 281 N.W.2d at 841 & n. 3.

Therefore, on the issue of contribution, we reverse and remand with directions to enter judgment for the railroad against the grain terminal for $10,500 rather than $6,000.

■ The railroad, joined by the grain terminal, also argues that a new trial should be granted because the plaintiffs' medical expert testified to an injury which was not disclosed during discovery. In response to interrogatories, the plaintiffs indicated that their medical expert would testify based on reports which had previously been provided to counsel which noted pain in the area of the coccyx but did not mention a fracture. Two weeks prior to trial, plaintiffs' doctor examined Kenneth Ford a second time. While Ford's coccyx had not moved when tested at a prior examination, the coccyx did move at this exam. Plaintiffs' doctor testified that the fall caused weakness in the area which, with repeated sitting, led to the later coccyx fracture.

The defendants' doctor testified by deposition taken prior to trial and thus did not respond to the specific recent finding that the coccyx moved. However, after examining Kenneth Ford and reviewing numerous reports, he concluded that Kenneth Ford was not disabled at all as a result of the fall.

The plaintiffs knew of the new finding by the expert witness prior to trial but did not inform the defendants. Minn.R.Civ.P. 26.05(1) requires a party to supplement responses to questions regarding the substance of an expert witness' testimony. Rule 26.05(2) also requires supplementation to any interrogatory where prior answers are no longer true. Thus, the plaintiffs were in clear violation of the rules. However, the trial court felt the defendants were adequately on notice of a coccyx injury to allow their expert to prepare for trial. Also, at no time did either defendant request a continuance or in any way seek to offer any additional evidence. Rather, the defendants moved to strike the testimony of plaintiffs' physician on this point.

This court has generally considered the proper remedy for failure to disclose information regarding an expert witness to be largely within the discretion of the trial court. *See Phelps v. Blomberg Roseville Clinic*, 253 N.W.2d 390 (Minn.1977). Here the omission was less serious than in some

prior cases because the existence of the witness was known in advance and the coccyx injury was already in issue. The defendants did not indicate any desire to present rebuttal testimony and did not request a continuance to call their expert witness in person to respond. Rather than attempt to meet the new evidence, the defendants chose to preserve the error as grounds for a new trial. For these reasons, the trial court did not abuse its discretion on this issue.

The trial court is therefore affirmed in part but reversed and remanded for entry of judgment for the railroad against the grain terminal for $10,500.