**STATE of Minnesota, by Warren SPANNAUS, its Attorney General, Petitioner, Respondent,**

v.

**Daniel HEIMER, et al., Lower Court Respondents,**

**Burlington Northern Railroad Company, Appellant.**

No. C8–85–2338.

Court of Appeals of Minnesota.

Sept. 30, 1986.

Review Denied Nov. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., Lloyd J. Moosbrugger, Asst. Atty. Gen., St. Paul, Arthur O. Anselmo, Sp. Asst. Atty. Gen., Dept. of Transp. Duluth, for respondent.

Thomas R. Thibodeau, Joseph J. Roby, Jr., Johnson, Killen, Thibodeau, Seiler, P.A., Duluth, for appellant.

Heard, considered, and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an eminent domain proceeding. The only contested issue at trial was whether appellant, Burlington Northern Railroad (Burlington), received just compensation for a parcel of land condemned by the State in 1982 for use in extending Interstate Highway 35. The parcel is located in downtown Duluth.

In 1984, a panel of three court-appointed commissioners valued the parcel, approximately 32 acres, at $3,400,000. The State appealed the award to the district court as excessive. Burlington cross-appealed the award as insufficient.

Prior to and during the district court trial, Burlington objected to the State's late release of appraisal information and the State's failure to timely produce a written report. Burlington claims it was prejudiced because late production of the report did not allow sufficient time to prepare for cross-examination. The State released the appraisal information in supplemental interrogatory answers nine days before trial, but did not turn over the appraiser's final written report containing the underlying data until the State's expert used the report to refresh his recollection during Burlington's cross-examination.

During trial, the court sustained the State's objections to admission of testimony by Burlington's appraisal expert on subsequent comparable sales.

The jury valued the parcel at $2,500,000. Burlington moved for additur, a new trial, or judgment notwithstanding the verdict, and now appeals the trial court's denial of these motions. We affirm.

## FACTS

In May 1982 the Department of Transportation condemned a 32.417 acre tract of Burlington's land located near Duluth's business district. Following the condemnation, a court-appointed commission valued the parcel at $3,400,000. After filing a notice of appeal to the district court from the commission's decision, Burlington served the State with interrogatories and a request for production of documents. Among the things Burlington sought were the names of the State's expert witnesses,

written appraisal reports, and the possible valuations to which the State's experts would testify:

(4) With respect to each expert identified in answer to Interrogatory No. 1 [expert witnesses] whom you expect to call as a witness at trial, state:

\* \* \* \* \* \*

(f) Each picture, film, handwritten note, memorandum report, analysis, deposition or deposition summary, statement, literature, record, or other document or recording of information upon which each expert will rely at trial.

Burlington served the State with interrogatories on January 8, 1985. The State had not responded by February 13, 1985. On that day Burlington mailed the State a Note of Issue and Certificate of Readiness for Trial, reminded the State that the answers were overdue, and cautioned that it would object to the use of any expert testimony not disclosed prior to trial. The State requested, and Burlington granted, an extension of the time to answer the interrogatories until April 26, 1985. Trial was set on for October 28, 1985.

On September 14, 1985, the State served its first interrogatory answers identifying C.E. LaSalle and Jerrold Peterson as its expert witnesses. The State objected to interrogatory 4(f) as:

not discoverable except to the extent contemplated in Minn.Stat. § 117.165, subd. 2, and further objected to as beyond the scope of Minnesota Rule of Civil Procedure 26.02(4)(A)(i) and as overly broad, vague and burdensome.

Burlington objected to the State's response to 4(f) by letter dated September 26, 1985:

All of this information is discoverable under both the rule and the statute. You gave us only names, no subjects, facts, opinion, or grounds. In particular, you did not state the values the experts will assign to the particular parcels.

In the letter Burlington reminded the State that Burlington would object to any expert testimony or appraisals not disclosed prior to trial.

A second set of supplemental interrogatory answers filed by the State on October 19, 1985, nine days before trial, contained valuations and information relied on by the State's experts:

Mr. LaSalle and an associate visited the subject property on numerous occasions. In addition they inspected comparable sales in the Duluth area.

In response to an interrogatory, the State indicated LaSalle would testify on "comparable sales data." However, in response to another interrogatory requesting LaSalle's valuation method, the State replied:

Value—Analysis of market data sales; evaluation of absorption capability based on demand potential for development of land in each section; discounted dollar value for future sales of land in each section; historical experience of real estate market in Duluth; projected potential demand for land parcels in each section.

As to the substance of Peterson's testimony, the State responded:

The Burlington Northern's parcels of land are segmented into two major parcels. The first parcel is 714.295 square feet of commercial and industrial land. If this land were sold at the same rate as existing commercial and industrial land in Duluth then it would require 16.62 years to dispose of the current parcel. The second parcel of land is utilized for tourist related activities and parking. This parcel of land consists of 680.161 square feet and would require 11 years to dispose of without disturbing current market forces. Over this period of time the ownership of this land would have to be financed. The corporation AAA Bond rate represents the cheapest source of financing available to Burlington Northern. The average corporation AAA Bond rate of 10.65 per cent for the last twelve years is used to estimate this financing. This bond rate is used to discount the future sales back to the present.

This answer describes the "absorption theory" of land valuation. On October 24, 1985, Burlington moved the court to limit or prohibit the experts' testimony to information disclosed in previous interrogatory answers, claiming the October 19 answers constituted unfair surprise and did not give it adequate time to prepare for trial. Burlington did not move for a continuance. Burlington contended that, prior to the October 19 answers, it interpreted the State's answers as relying exclusively on a comparable sales analysis. The State indicated, at the October 24 motion hearing, that LaSalle's final written report was not yet available.

The case was tried to a jury. During trial, the court sustained the State's objections to admission of testimony by Burlington's expert on subsequent comparable sales. Burlington made an offer of proof, but the trial court continued to suppress the offered testimony.

Burlington claimed several errors in the court's evidentiary rulings. The court overruled Burlington's foundation objection to "absorption theory" testimony by the State's experts, Peterson and LaSalle. The court found that the theory was relevant and that Burlington was not unfairly surprised.

The court did not require the State to turn over a copy of LaSalle's full appraisal report until LaSalle began using the written report to refresh his recollection during cross-examination. Burlington had a three-day weekend to examine the actual written report until continuing its cross examination of LaSalle on a Monday.

During trial LaSalle testified to his appraisal of another Duluth parcel which was condemned for Highway 35. He had prepared the other appraisal for Arrow Chevrolet Company. The court refused to allow Burlington to enter the Arrow report, known as Burlington Exhibit 40, into evidence. Burlington cross-examined LaSalle on his Arrow report and wished to enter the written report itself as additional impeachment evidence.

Burlington's expert valued the Burlington parcel at $4,275,000. The State's expert valued the parcel at $2,435,000. The jury valued the parcel at $2,500,000.

## ISSUES

1. Did the trial court err by denying Burlington's motions to compel production of LaSalle's appraisal report. Did the trial court err by allowing the State's experts, LaSalle and Peterson, to testify on the absorption theory instead of limiting their expert testimony to the subject of comparable sales?

2. Did the court err by excluding Burlington's expert's testimony on subsequent comparable sales?

## ANALYSIS

### I.

*Expert Testimony and Disclosure*

Appellant raises certain arguments in support of its claim that the court erred by denying its motion to compel production of LaSalle's appraisal report and to limit LaSalle's and Peterson's testimony to comparable sales. The arguments arise under Minn.Stat. § 117.165 (1984), Minn.R.Civ.P. 26, and Minn.R.Evid. 612.

Minn.Stat. § 117.165 states, in pertinent part:

Subd. 2. In the event of an appeal from the award of commissioners, and upon written demand by a party, the other party shall disclose under oath in writing within 15 days the appraisal witnesses the disclosing party proposes to call on its behalf at trial, and the *amount of their appraisals* of the damages. The demand shall be deemed continuing.

Subd. 3. A party shall not be permitted at the trial, except for just cause shown, to use any expert witness on the matter of damages whose name, address *and appraisal* was not disclosed to the other party following a written demand.

(emphasis added). Burlington contends that these subdivisions, read together, require disclosure of the appraisal witness,

the amount of the appraisal, *and* the full appraisal report. The State contends that subdivision 2, upon a proper demand, only requires disclosure of the actual "dollar amount" of the appraisal and does not include all the underlying data that went into calculating the dollar amount. The State contends that subdivision 3 simply speaks to the remedy for a violation of subdivision 2. Because the State did not produce the total appraisal report, Burlington contends, under the statute, the court should have limited LaSalle's testimony to the information disclosed in the State's earlier interrogatory answers. The court should not have permitted him to testify on the "absorption theory" method.

We have not found a Minnesota case precisely interpreting subdivisions 2 and 3 of Minn.Stat. § 117.165. In *Rein Recreation, Inc. v. City of St. Paul,* 298 N.W.2d 46 (Minn.1980), the City of St. Paul demanded an appraisal report for a condemned parcel of Rein's land, located between Crosby Park and Hidden Falls on the Mississippi River. Rein planned to build a luxury apartment complex on the land. Following opposition to the project, the city condemned the land. During discovery, Rein turned appraisal information over to the City pursuant to a request under Minn. Stat. § 117.165, subd. 3. The appraisal was later updated and the newer evaluation disclosed in a routine exhibit list. Rein did not inform the City of the report's contents, however.

At trial the district court concluded the City was unfairly surprised and offered the City options to allow it to prepare for cross-examination. The City elected to take a recess. The supreme court did not reach the issue of whether the court erred in admitting the testimony, concluding any *possible* error was harmless. *Id.* at 51.

No other appellate court cases interpret the language of subdivisions 2 and 3. *Rein* does not expressly state, nor do we interpret subdivision 3 as specifically requiring production of the entire appraisal report. The words of Minn.Stat. § 117.165, subds. 2 and 3, taken as a whole, appear to limit the mandated disclosure to the "amount" or dollar figure. We do note that the spirit of the statute would appear to be better served by complete disclosure of both the amount and the underlying data.

Here, during the October 24, 1985, pre-trial motion hearing, the trial court concluded that the State had complied with the statute by providing LaSalle's dollar valuation of the parcel, the basis of his valuation, and by providing Peterson's opinion and its basis. The State's interrogatory answers state that while LaSalle would be relying on the highest and best use and on comparable sales analysis, he would also testify to the "evaluation of absorption capacity * * * discounted dollar value for future sales of land in each section; * * * [and] projected potential demand for land parcels in each section." This information appeared in the second set of supplemental answers served by the State. The trial court refused to find unfair surprise. After this adverse pre-trial ruling, Burlington did not claim that it needed more time to prepare for trial and did not move for a continuance.

Burlington also argues that the court erred by not imposing Minn.R.Civ.P. 26.-03(4) sanctions against the State for failing to provide a copy of LaSalle's full appraisal report prior to trial and for failing to seasonably supplement interrogatory answers pertaining to his appraisal method. Failure to provide this information, Burlington argues, violates Minn.R.Civ.P. 26.05(1)(B), which requires a party to "seasonably supplement" responses with respect to the identity of each expert witness expected to be called at trial, subject matter on which the witness is expected to testify, and the substance of the testimony. While Rule 26.03 is normally used by the party from whom information is sought, it may be used by either party.

However, "the proper remedy for failure to disclose information regarding an expert witness [is] largely within the discretion of the trial court." *Ford v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 294 N.W.2d 844, 847 (Minn.1980) (citing

*Phelps v. Blomberg Roseville Clinic,* 253 N.W.2d 390, 394 (Minn.1977)). The duty to supplement is continuing. *Id.*

The court has a duty to suppress testimony which would result in unfair surprise. Exclusion of testimony is a harsh sanction, justified only when prejudice would result. *Cornfeldt v. Tongen,* 262 N.W.2d 684, 697 (Minn.1977). In addition to showing prejudice, the party objecting should move for a continuance. *Phelps,* 253 N.W.2d at 394.

Quoting *Gebhard v. Niedewiecki,* 265 Minn. 471, 478, 122 N.W.2d 110, 115 (1963) *Phelps* states:

> The application of this rule should not require the disclosure of every bit of information discovered after the answers are served, but should require that any information which is of a substantial nature and which will render the answers theretofore served untruthful, unreliable, or incomplete must be disclosed.

*Phelps,* 253 N.W.2d at 393.

■ Here, although appellant made its objections known, it did not move for a continuance. Citing *Rein,* appellant argues that the burden is on the court to offer remedies. We do not agree. *Phelps* places this burden on the objecting party.

Burlington failed to show actual prejudice. The record shows that Burlington had LaSalle's full report over a long weekend before completing cross-examination of LaSalle. The evidence of which appellant complains was not completely new to it. The supplemental interrogatories revealed that the State mentioned "absorption" as part of its theory on value. Given these facts, we cannot say the trial court erred in failing to limit the State's expert testimony to comparable sales.

■ Burlington also argues that Minn.R. Evid. 612 compelled production of the appraisal report. Rule 612 provides that if a witness, while testifying, uses a writing to refresh his recollection, the adverse party is entitled to a copy of that writing. We hold that production of the appraisal report during LaSalle's cross-examination was timely under Rule 612. Cross-examination was the first point at which LaSalle consulted his written report to refresh his recollection. While we do not condone respondent's late production of the written report, we hold that the trial court acted within its discretion in not ordering delivery of the full report with the underlying data until this point in the trial.

While we find the State complied with the letter of Minn.Stat. § 117.165 and Minn.R.Civ.P. 26.05(1)(B), its late disclosure of the substance of LaSalle's testimony and reluctance to turn over a copy of his written report until cross-examination was underway does not comply with the spirit of either the statute or the rules.

This case has been in suit since 1984, and the State has had adequate time to obtain appraisals and produce documents and answers to appellant's interrogatories. While we uphold the court's decisions to allow LaSalle's and Peterson's testimony on the absorption theory and not to compel production of the appraisal report until LaSalle was under cross-examination, we do not approve of late disclosure of such vital information. The State's failure to cooperate contrasts sharply with appellant's willingness to grant extensions of time at the State's request.

*Transcript Evidence*

Following submission of briefs, appellant filed with this court a motion to strike portions of respondent's appendix and brief containing exerpts from and references to the transcript from the 1984 valuation hearing before the court-appointed commissioners.

■ As a general rule,

> [i]t is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered.

*Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 583 (Minn.1977). The Commission's transcript was not technically part of the record before the trial court. Examination of the offered documents leaves us with a firm conviction that they

were not essential to the State's case, were not part of the trial court record, and are not reviewable on appeal.

## II.

### *Subsequent Comparable Sales*

 Burlington claims the trial court erred by excluding its expert's testimony on three comparable sales made subsequent to the 1982 condemnation of the parcel in question. Burlington offered the sales in an effort to bolster its opinion of fair market value. The general rule is that damages in condemnations are measured as of the date of the taking. *Twin Cities Metropolitan Public Transit Area v. Twin City Lines, Inc.,* 301 Minn. 386, 398, 224 N.W.2d 121, 128 (1974). The court has discretion in determining the relevance of subsequent comparables. *See* Minn.R. Evid. 402. With proper foundation, subsequent sales of adjacent or comparable property may be relevant. *Id.* This evidence could have been admitted for whatever weight the jury chose to give it. In this instance, where the comparable sales occurred a few years after the condemnation of the parcel in question, we hold the trial court acted within its discretion in excluding the evidence.

### *Impeachment Rulings*

 Burlington argues that the court erroneously refused to admit "Burlington Exhibit 40," an appraisal done by LaSalle for one of the other Duluth condemnee landholders. Burlington was allowed cross-examination on the issue and was given the opportunity to attempt to impeach the State's appraisers. We hold that the court acted within its discretion by excluding the exhibit on relevancy grounds. *See* Minn.R. Evid. 402 and 403. The court did allow cross-examination of LaSalle on this general subject, and we find no real prejudice to Burlington's case nor clear error in the trial court's exclusion of the written report.

## DECISION

The trial court did not err by allowing the State's experts to testify on the absorb-

tion theory of value in addition to comparable sales. The trial court did not err in denying Burlington's motion to compel pretrial production of documents, where the State made appraisal information available nine days before trial but did not turn over the full appraisal report until cross-examination of the State's expert. The trial court's other evidentiary rulings were not an abuse of discretion.

Affirmed.