**NORWEST BANK MIDLAND, f.k.a. Midland National Bank of Minneapolis, Respondent,**

**v.**

**Lawrence SHINNICK, defendant and third party plaintiff, Appellant.**

**Gerald VAN DIVER, Donnie D. Amundson, et al., Respondents,**

**v.**

**James HECKENLAIBLE, individually and as personal representative of the Estate of M.J. Heckenlaible, third party defendants.**

No. C9–86–1421.

Court of Appeals of Minnesota.

March 24, 1987.

John L. Krenn, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Norwest Bank Midland, f.k.a. Midland National Bank of Minneapolis, respondent.

Paul L. Ratelle, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, for Lawrence Shinnick, defendant and third party plaintiff, appellant.

Maclay L. Hyde, Bassford, Heckt, Lockhart & Mullin, Minneapolis, for Gerald Van Diver, respondent.

Donnie D. Amundson, New Prague, pro se.

James T. Bullard, Leonard, Street and Deinard, Minneapolis, for James Heckenlaible, individually and as personal representative of the Estate of M.J. Heckenlaible, third party defendants.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Norwest Bank Midland (Midland) brought this action against appellant Lawrence Shinnick and other debtors, seeking payment of promissory notes and guaranties. The trial court entered judgment against Shinnick pursuant to a jury verdict. The jury also rejected appellant's claims against Midland, other defendants, and third party defendants Walter Tiffin and James Heckenlaible for fraud, misrepresentation, and state security law violations. On appeal, Shinnick challenges the trial court's exclusion of expert testimony and other trial court rulings as errors requiring a new trial, and alleges abuse of discretion in the award of attorney fees attributed to the defense of a frivolous claim.

## FACTS

In July 1981, Donnie Amundson, Walter Tiffin, and brothers Charles Heckenlaible and James Heckenlaible received approval from the federal Office of the Comptroller of Currency (OCC) to establish a new bank, the First National Bank of Prior Lake (Bank). These initial investors financed their purchase of stock in the Bank with loans from respondent Midland. They executed promissory notes, secured by the stock shares, and payable on demand. As additional security, Midland demanded that each investor sign a cross-guaranty for the other investors' loans.

The Bank opened in October 1982. Out of 60,000 shares, Tiffin and James Heckenlaible each owned 2500 shares and Charles Heckenlaible and Amundson each owned 5000 shares. M.J. Heckenlaible, the Heckenlaibles' father, also purchased 2500 shares. Amundson became president of the Bank and chaired the Board of Directors. Charles and James Heckenlaible were officers and board members. Tiffin,

although not on the board, attended the board's meetings.

Soon after the bank opened M.J. Heckenlaible died, and Tiffin and the younger Heckenlaibles had several disagreements with Amundson over his management of the Bank. These differences intensified until Tiffin and the Heckenlaibles decided to sell their Bank stock. Midland agreed to the sale, provided the buyers would step into the sellers' shoes by assuming their loans and cross-guaranties.

By November 1983, Gerald Van Diver had agreed to purchase Charles Heckenlaible's Bank shares and Cyril Kruse had agreed to purchase James Heckenlaible's shares. Appellant Lawrence Shinnick agreed to purchase the stock held by Tiffin and by the estate of M.J. Heckenlaible.

The stock sale closing took place on November 25, 1983. Sellers Tiffin and the Heckenlaibles attended, as did Amundson. The closing was facilitated by Midland officer Michael Bodeen. Shinnick and the other buyers, however, signed the promissory notes and cross-guaranties outside of the closing and were not present at the closing. Bodeen unlawfully had their signatures notarized by a Midland employee outside of their presence.

Van Diver was principal stockholder in two companies, Software Strategies, Inc. (SSI) and Micro-Information Publishing, Inc. (MIP). Amundson introduced Van Diver to Shinnick during the stock purchase negotiations, and in late summer 1983 Shinnick purchased an interest in both SSI and MIP. Shinnick became SSI's chief operating officer and an officer of MIP, in charge of raising money for the two companies.

After Shinnick and Van Diver purchased the Bank stock, the Bank made substantial loans to SSI and MIP. Between January and April 1984, the Bank loaned $1,740,000 to SSI and $639,000 to MIP. Shinnick personally guaranteed each loan. The Bank had also loaned Shinnick $25,000 to purchase the Bank stock and an additional $135,740 in personal loans.

In April 1984, OCC investigators discovered "very serious problem loan situations" at the Bank. The OCC's letter to the Board of Directors stated that its examination of the loan portfolio disclosed "totally unacceptable conditions brought about by total disregard for the law and the total absence of sound credit judgment by President Amundson."

The report concluded the Bank had problem loans surpassing $7.1 million, "or 963% of the bank's gross capital funds, a level which is totally unacceptable." The OCC classifies problem loans as substandard, doubtful, and loss. Loans totaling $2.3 million were classified as loss; another $1.25 million were classified as doubtful.

The OCC further found that:

In several instances loans grossly in excess of the legal lending limit have been granted by President Amundson to insiders and/or their companies for use in highly speculative venture capital type pursuits. Loss classifications centered largely in the illegal extensions of credit to the insider owned Micro Information Publishing Inc., and Software Strategies Inc.

In fact, $2 million of the Bank's $2.3 million in loss loans were to SSI and MIP. The OCC report also classified the $160,740 in personal loans to Shinnick as doubtful. Because the volume of loan losses that had to be absorbed greatly exceeded the Bank's entire capital base, the OCC declared the Bank insolvent and ordered it closed in May 1984.

In October 1984, Midland brought this suit against Amundson, Van Diver, Kruse, and Shinnick, seeking judgment on the promissory notes and guaranties. Shinnick counter-claimed against Midland for fraud, misrepresentation, and violation of state securities laws. He also brought a cross-claim against Amundson for violation of state securities laws. Finally, he impleaded as third party defendants respondents Tiffin and James Heckenlaible (as representative of M.J. Heckenlaible's estate), from whom he had purchased his Bank stock, alleging fraud and misrepresentation.

A jury heard the case in a three-week trial beginning in late May 1986. Defendant Kruse had declared bankruptcy and did not participate in the trial. Van Diver admitted liability on the promissory note and waived his right to a jury trial. The trial court granted a directed verdict against Amundson on Midland's claims against him.

The jury found Amundson and Shinnick had signed the promissory notes and the cross-guaranties and that Shinnick had signed the stock purchase agreement. The jury was given the option of choosing whether Amundson acted as agent for any of the parties at the stock purchase closing, although the only claim of agency was from Shinnick, who alleged Amundson was the agent for Midland, Tiffin, and Heckenlaible. The jury, however, found Amundson was Shinnick's agent and that he acted within the scope of his agency. The jury also found Amundson did not violate the Minnesota Securities Act with respect to Shinnick's stock purchase.

The trial court adopted the special verdict as its findings of fact and made additional findings. The court found there was sufficient consideration for the note and guaranty signed by Shinnick and that they were enforceable in accordance with their terms. The court entered judgment against all defendants in the amounts requested. Specifically, the court entered judgment against Shinnick and ordered him to pay Midland $356,781.65 plus attorney fees, costs, and disbursements. The court dismissed all of Shinnick's claims.

The court later ordered Shinnick to pay additional attorney fees of $35,000 to Tiffin and Heckenlaible, finding that Shinnick had pursued a frivolous claim against them. The court limited the award to fees incurred after the discovery period, ruling that Shinnick knew at that point the evidence would not sustain his claim. The court denied Shinnick's motion for a new trial. Shinnick appeals from the judgment and the order denying a new trial.

## ISSUES

1. Does the exclusion of expert testimony warrant a new trial?

2. Was it an abuse of discretion to order Shinnick to pay attorney fees to Tiffin and Heckenlaible for bringing a frivolous claim?

## ANALYSIS

■■■ 1. Trial courts have discretion to determine the appropriate sanction for a violation of the discovery rules. *Cornfeldt v. Tongen,* 262 N.W.2d 684, 697 (Minn. 1977). *See also Phelps v. Blomberg Roseville Clinic,* 253 N.W.2d 390, 394 (Minn. 1977). "The general rule in Minnesota is expert testimony should be suppressed for failure to make a timely disclosure of the expert's identity only where 'counsel's dereliction * * * is inexcusable and results in disadvantage to his opponent.'" *Dennie v. Metropolitan Medical Center,* 387 N.W.2d 401, 405 (Minn.1986) (quoting *Krech v. Erdman,* 305 Minn. 215, 218, 233 N.W.2d 555, 557 (1975)). The crucial question is whether the late disclosure resulted in any appreciable degree of prejudice. *Id.* (citing *Phelps,* 253 N.W.2d at 394).

■■■ In determining whether to suppress expert testimony, the trial court should consider whether the failure to disclose was inadvertent. *Cornfeldt,* 262 N.W.2d at 697. The trial was originally set for February 1986 but by January 1986 appellant had only given notice of his intent to call an expert witness on banking practices and had not identified that witness. Because of a reassignment in judges, the trial was continued until May 1986. However, Shinnick still did not identify the expert witness until one week before the new trial date.

Shinnick claims he was unable to retain the expert until two weeks before trial. During preceding months, however, appellant gave no notice to the other parties of his continuing need for an expert witness or of his difficulty in finding an appropriate witness. *See Krech,* 305 Minn. at 217–18, 233 N.W.2d at 557 (counsel has an ongoing obligation to keep adversaries apprised of

the changes in circumstances that make it necessary to call witnesses or introduce evidence not previously disclosed). Appellant has not shown that he raised the subject during a trial preparation hearing in February 1986. Moreover, after retaining the expert, Shinnick delayed yet another week before notifying the other parties, and the notice gave only the expert's identity. The trial court evidently did not believe Shinnick had suffered grave difficulty in finding the appropriate witness.

Necessity is another factor to be evaluated by the trial court. *Cornfeldt,* 262 N.W.2d at 697. Appellant provided only a statement of the expert's opinions on the day of trial, and to this date has not identified how the expert testimony would clarify or rebut the ample evidence admitted through testimony and exhibits regarding the Bank's operations or its alleged departure from standard banking practices. Although Shinnick indicated the expert was to testify on these issues, Shinnick could have elicited the same information from the documentary evidence and through examination of the witnesses.

Shinnick relies on the supreme court's caution that "where the failure to disclose is inadvertent but harmful, the court should be quick to grant a continuance * * *." *Krech,* 305 Minn. at 218, 233 N.W.2d at 557. Shinnick argues the trial court improperly rejected his offer of several less severe alternatives, including waiver of a jury trial, deposing the witness over the weekend, and acceptance of any continuance ordered.

The trial court did consider alternative methods short of exclusion for preventing prejudice. However, the court ruled on the motion to suppress after jury selection. Tiffin and Heckenlaible refused to waive their right to a jury trial and Midland objected to the late deposition of the witness because it had scheduled other trial preparation work for the weekend. All other parties, including Shinnick's co-defendants, objected to a continuance, asserting that the case had already been continued for

four months and many trial preparation costs would be re-incurred. We conclude the trial court did not abuse its discretion in excluding the expert testimony.

■ Appellant has attacked the trial court's handling of the case on six other bases. First, he argues the OCC's letter to the Bank's Board of Directors should not have been admitted into evidence because he was unfairly prejudiced by certain of the letter's statements. The letter reports that overline loans obtained by Shinnick for SSI and MIP contributed to the Bank's failure. Shinnick claims there was no showing that he was responsible for incurring the loans. However, Shinnick was the officer in charge of raising money for SSI and MIP. Because Shinnick claims that Amundson and others were the cause of the Bank's insolvency, evidence that he added to the Bank's financial instability by obtaining over $2 million in loans for himself and his companies is highly relevant.

■ Appellant alternatively argues the OCC's letter should have been excluded as hearsay. The trial court found the letter comes within the "public records" exception to the hearsay rule. *See* Minn.R.Evid. 803(8). The rule provides for the admission of statements of public agencies that set forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," or "factual findings resulting from an investigation made pursuant to authority granted by law," unless a lack of trustworthiness is indicated. Minn.R.Evid. 803(8)(B) and (C). These requirements were specifically addressed and satisfied by a certificate of the record's custodian that accompanied the letter under seal of the OCC.

Second, appellant alleges error in the trial court's decision to change the order of proof during the testimony of the second witness. The court initially permitted Midland to introduce evidence in defense of Shinnick's counter-claims as part of its case-in-chief, but then reversed its position and required the parties to restrict their evidence to the claim being presented.

Shinnick argues the change confused the jury and prejudiced his case.

■ Trial courts have discretion to control the order of proof. *Nathan v. St. Paul Mutual Insurance Co.*, 251 Minn. 74, 82, 86 N.W.2d 503, 509 (1957). A new trial is warranted on this basis only if the irregularity in the proceedings at trial denied a party a fair trial. Minn.R.Civ.P. 59.01(1).

■ It is evident the trial court carefully deliberated and chose its initial approach with a view towards efficiency, and with equal care changed that approach to one that sacrificed some efficiency in favor of clarity. Most importantly, the trial judge explained to the jury both the change in procedure and the reason for the change. Counsel for all parties also explained the multiple claims to the jury. Shinnick was not denied a fair trial by the change in order of proof.

Third, appellant claims the trial court erred in finding the guaranty was supported by consideration. The trial court made findings on this and other matters not submitted to the jury by agreement of the parties. Appellant now argues, however, that because Midland received his guaranty after it had loaned him and others money, accepted guarantees from others, and cancelled the original debtors' notes and guarantees, the only consideration for the guaranty was his pre-existing debt under the promissory note. *See Baker v. Citizens State Bank of St. Louis Park*, 349 N.W.2d 552, 557 (Minn.1984) (a pre-existing debt is not sufficient consideration for a third-party guarantee).

■ A promise of guaranty "may be made in consideration of a requested act or a requested promise of action or of forebearance." *Id.* at 558. Appellant does not dispute that Midland cancelled the original notes and guarantees in return for his promise to assume the notes and to guarantee each new borrower's note. Moreover, the jury specifically found Shinnick had signed the guaranty on the same date the other new documents were executed and the original documents were cancelled.

Any late delivery of the new guaranty does not defeat this consideration.

Appellant further claims the note and guaranty are void because the stock transfer violated federal banking regulations. Appellant refers to a restriction in the original subscription agreement prohibiting the Bank investors from selling their shares for at least two years. This restriction was incorporated pursuant to federal regulations. *See* 12 C.F.R. § 16.5(e) (1982). This case, however, involves no issue as to the contractual responsibility of the parties to the original issuance of stock. The jury found no banking regulations had been violated. The cited regulation applies only to a bank's sale of stock. *See id.*

Fourth, Shinnick challenges several jury instructions. He claims the instructions unduly emphasize his burden on claims brought under the Minnesota Securities Act, Minn.Stat. §§ 80A.01–.31 (1982). The state law is to be construed in coordination with the related federal regulation. *See id.* § 80A.31. We find the instructions are consistent with case law setting forth the elements of fraud under the parallel federal statute. *See Harris v. Union Electric Co.,* 787 F.2d 355, 362 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986) (applying 17 C.F.R. § 240.10b–5 (1985)).

Shinnick further complains the court erred by instructing the jury on reliance as an element of his fraud claims, arguing reliance should have been presumed. The presumption of reliance is limited to cases involving primarily omissions. *Austin v. Loftsgaarden,* 675 F.2d 168, 178 n. 21 (8th Cir.1982). Although Shinnick alleged omission, he also made numerous claims of misrepresentation. His dual assertion shapes the rule of law supporting the trial court's decision to place the burden of proof on appellant and instruct the jury on reliance. *See Sharp v. Coopers & Lybrand,* 649 F.2d 175, 188 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982) (trial court should determine the most reasonable placement of the burden of proof, with the plaintiff

traditionally assuming the burden of demonstrating causation and with only unusual circumstances causing a shift in the burden from the plaintiff to the defendant), *cited with approval in Austin,* 675 F.2d at 178 n. 21.

Appellant also claims error in the instruction requiring him to prove justifiable reliance. Again, the trial court's instructions are consistent with the Eighth Circuit's approach to Rule 10b–5 cases. *See, e.g., Nye v. Blyth Eastman Dillon & Co., Inc.,* 588 F.2d 1189, 1197 (8th Cir.1978). We do not find cause for reversal in any other disputed instruction.

Fifth, appellant claims the verdict is not justified by the evidence. *See* Minn.R.Civ.P. 59.01(7). The appellate court will substitute its judgment for that of the jury only if there is no evidence reasonably tending to sustain the verdict or if the verdict is manifestly and palpably against the weight of the evidence. *Otterness v. Horsley,* 263 N.W.2d 403, 405 (Minn.1978). Our review of the record reveals ample evidence supporting the jury verdict. Furthermore, although Shinnick strenuously characterizes himself as an unwitting pawn in the Bank's ultimate insolvency, the jury knew Shinnick is an attorney who also has a master of laws degree with a concentration in securities law and an M.B.A. with a concentration in finance.

Sixth, Shinnick contends the trial court erred in ordering him to pay Midland's attorney fees. Because Midland caused judgment to be entered prior to the court's order on attorney fees, Shinnick claims the attorney fees were merged into the judgment and extinguished. This claim is frivolous; the judgment provided that the total amount owed Midland was $356,-781.65 plus attorney fees, pending an evidentiary hearing on the appropriate amount of fees.

2. A trial court has discretion to award reasonable attorney fees against a party who acted in bad faith or asserted a claim or defense knowing it to be frivolous. Minn.Stat. § 549.21 (1984). An award of

attorney fees under the statute may only be upset upon a finding of abuse of discretion by the trial court. *National Recruiters, Inc. v. Toro Co.*, 343 N.W.2d 704, 709 (Minn.Ct.App.1984).

Under this statute, the trial court ordered Shinnick to pay Tiffin and Heckenlaible $35,000 in attorney fees. The court found that $35,000 corresponded to fees incurred after the close of the discovery period, explaining that Shinnick may originally have had reason to implead Heckenlaible and Tiffin, but that after the discovery period was finished and the case set for trial, he knew the proof would not sustain his claims, and yet continued to pursue the claims.

■ Appellant argues the trial court's failure to grant Tiffin and Heckenlaible's motion for a directed verdict conclusively proves the claim was not frivolous. We disagree. The trial court could properly reserve judgment on the case pending the jury's assessment on the credibility of witnesses. Moreover, the denial of a motion for a directed verdict at that point in time was merely a conservative decision to permit the jury to render a verdict on the issue after it had listened to and considered all the evidence. The trial judge stated as much by expressing his belief that the jury should be allowed to decide the case because it has "come this far." The court's choice does not enhance the merits of appellant's case.

## DECISION

■ The record does not support appellant's claims that the trial court abused its discretion in denying a new trial or in awarding a limited amount of attorney fees for pursuing a frivolous claim, and the trial court is affirmed in all respects. Because the terms of the note and guaranty provide for appellant to pay for all related collection costs, Midland will be awarded its attorney fees on appeal if it files a petition (with four copies and proof of service) with this court within ten days. *See* Minn.R.Civ. App.P. 127. Midland must support its request with specific documentation that will enable this court to make a determination of the appropriate amount of fees. Appellant, if he so desires, may file written objections (with four copies and proof of service) within five days of receipt of the petition.

Affirmed.